THE STATE v. THE TOMBECKBEE BANK.

1. The charter of the Tombeckbee Bank is not forfeited by a failure to pay specie on demand for its notes. There being no provision to that effect expressed therein.
2. A charter is a contract, and the act of 1821 declaring the charter of the Tombeckbee Bank liable to forfeiture for a failure to pay specie on demand for its notes, is not binding on, and cannot affect the Bank; as it amounts to an alteration of the terms of the contract, without the consent of the Bank.

On the 25th of September, 1828, a writ of *quo warranto* was sued out from the office of the Clerk of the Circuit Court of Washington county, at the instance of the Solicitor of the first Judicial Circuit, in behalf of the State of Alabama, against the President Directors and Company of the Tombeckbee Bank.

The writ recited, that whereas an act was passed by the Legislative Council and House of Representatives of the Alabama Territory, on the 13th of February, 1818, entitled, "An act to establish the Tombeckbee Bank in the town of St. Stephens," it is provided that there shall be established in the town of St. Stephens a Bank, &c. (here the act of incorporation is set out.)[a] And whereas the said President Directors and Company, did after the passage of said act, issue notes, receive deposites, make discounts, carry on banking operations and other monied transactions, as usually performed by banks, &c. And whereas from the 27th of June, 1827, till the date of the writ, at their banking house, they had wholly failed to pay specie on demand, contrary to the true intent and meaning of the said act; and had also after they went into operation taken more than at the rate of six per cent per annum on loans and discounts; and had also neglected to proceed annually to the election of thirteen directors to superintend their affairs as required by said act: Therefore the said President, Directors and Company, were required to appear, &c., and answer to the State, wherefore, after said breaches, and by what authority they continued to exercise the privileges of a banking company; and to shew cause why their corporate powers should not be declared forfeited, and said Bank dissolved, &c.

The attorney for the Bank acknowledged service of the writ, and at the return term filed the plea of not guilty. The cause was at the same term submitted to the Court on the evidence of Robert H. Croswell, introduced by the

a Tombeckbee Bank charter, Laws of Ala. page 40.

State. who deposed, "that the Tombeckbee Bank had not paid specie for its notes on demand, or when requested, since the 1st of June, 1827, up to the time of trial; that he was the first Teller of said bank for many years previous to and up to the time of its failing to make specie payments. That in its operations as a bank, when notes were by it discounted, the practice invariably was, on discounting notes at ninety days, to charge interest at six per cent per annum for ninety-four days; that the Bank had invariably allowed to the drawers and securities three days grace on notes so discounted." And it was agreed that the legal questions growing out of said evidence should be referred to the Court for a decision, whether said bank charter had from the law and facts been violated and forfeited, or not; and a judgment *pro forma* by consent was entered for the defendants.

This judgment is by the counsel for the State in this Court, assigned for error.

SALLE and KELLY, for the State. The obligation on the part of the Bank to pay specie for its notes, though not expressed in so many words, is plainly deducible from the charter, and, from the nature of the subject, must be held as an indispensible condition of the continuance of the franchise: It is indispensible to the wholesome exercise of it; without the payment of specie, the object for which the Bank was created fails. The public benefits which were the equivalent to be received for the grant, are not realized. It certainly must be implied that the Bank will redeem its notes when presented; and if so, the obligation is as strong as if expressed. It is then properly to be considered as an implied condition in law.[a]

A corporation created by the Legislature forfeits its charter by *nonuser* or *misuser*, and in such case the State may, by *quo warranto*, resume the franchise.[b] The taking of interest, habitually, above six per cent, the rate fixed by the charter, was a misuser amounting to usury.[c] And the failure to pay specie for its bills, was such a misuser and abuse of the franchise, in connexion with the usury, as amounted to a forfeiture.[d] The suffering of an act to be done which deprives a corporation of the power of continuing business, is sufficient to create a forfeiture.[e]

The act of 1821,[f] provides the method of proceeding to declare the charter forfeited. But it was forfeited without the aid of this act, by the violation of an implied condition. An act providing a particular form of remedy can as well

*a* 2 Thomas's Coke, 152 to 141.
4 Whea. 658.
Dartmouth College v. Woodward.
4 Whea. 513
651, 706.
The State v. R. Stebbins et al.
1Stewart299
*b* 9 Cran. 45,51

*c* 2 Cowen 769.

*d* 6 Cowen 217

*e* 19 John. 456,
*f* Laws of Ala. page 62,

be passed after the enactment of the charter as before. Be-
sides this is not to be considered as a private corporation,
nor tested by the rules of private right.  It is a *quasi* pub-
lic *corporation*, and such can be regulated by enactments
at all times, when the public good or public interest re-
quires it.

HOPKINS and HITCHCOCK, for the defendants.  It is al-
leged that from the 17th June, 1827, till the 25th Septem-
ber, 1828, the Bank failed to pay its notes in specie on
demand; and it is prayed that its charter may be adjudged
forfeited.  In the case of *Logwood et al* v. *The Huntsville
Bank,*[a] this Court decided that a charter is a *contract*, the
terms of which cannot be varied by either of the contract-
ing parties without the consent of the other.  The Court in
that case use the following emphatic language, "any at-
tempt to alter or abridge the provisions of that charter,
without the consent of the individuals composing the cor-
poration, would not be valid.  So long as it confines itself
to the provisions of its grant, the corporation is omnipotent,
and independent of any legislative control."  An impor-
tant inquiry then is, whether there is any provision in the
charter which declares that it shall be forfeited on a failure
by the Bank to pay specie for its notes.  It will be found
upon examination that there is no such provision, and none
such can be implied; but on the contrary, from the tenor of
several of the provisions of the charter, an implication di-
rectly opposite arises.  The general law of the land gov-
erning all corporations and individuals, would give a recov-
ery of the amount of the note, and eight per cent interest by
way of damages.  But the Legislature has given an addi-
tional remedy; for it is expressly provided that the *stock-
holders* may be proceeded against, jointly and severally,
and in a particular *summary way*, and yet this shall not
exempt the *corporation* from liability.  This is the pen-
alty provided for the non-payment, and the grantors of the
charter did not think proper to add any other: they never
intended that the corporation should be dissolved on fail-
ure to pay its notes, else they would have said so.  If a dis-
solution was to take place on such a failure, how useless
would be that provision in the charter which says, that pro-
ceeding against the stockholders "shall not be construed to
exempt the said *corporation*, or the lands, tenements,
goods or chattels of the same, from being also liable."  It
cannot be supposed that the legislature presumed proceed-

a Minor's Ala.
Rep. p. 23.

ings would be had against the stockholders when the Bank had not refused to pay. They have then, in the event of the Bank's refusal to pay its notes, provided certain remedies against it; against *the corporation;* which corporation must, therefore, continue to exist after such failure to pay. Useless indeed would be that provision in the charter which gives to the creditor the right to sue, if the failure to pay, which alone gives the right to sue, should deprive the corporation of existence, and of course the suitor of the right to sue.

What would be the situation of the holders of the notes of the Bank, if the suspension of specie payments deprived the corporation of existence? It would be the same as if the charter had expired by its own limitation. When a corporation expires, all the debts due to and from it, die with it. The holders of the notes of the Bank would, therefore, upon a dissolution of the corporation, be without a remedy, and would sustain a loss to the entire amount of the notes which might be in their possession. It is therefore manifestly to the interest of all who hold notes, that the charter should not be declared forfeited.

The decision of the Supreme Court of New-York, shews that the suspension of specie payments is not a cause of forfeiture of a bank charter.[a] The refusal to pay specie is a contingency contemplated by the charter of the Tombeckbee Bank, and is provided for, by authorizing a suit against the stockholders, as well as against the corporation, and the recovery of principal and interest. At the time the charter was granted, suspensions of specie payments by Banks were of common occurrence, and certainly in contemplation of the Legislature; and those remedies were provided. But if no provision had been made for such a case, it would not have been in the power of the Court to provide for it by judicial decision. The Court are not left in doubt as to the terms of this contract; it is reduced to writing; from that writing alone, the rights and obligations of the parties must be ascertained, and from it, the disabilities and forfeitures which may be incurred. It must be interpreted according to its terms: *Expressum facit cessare tacitum.*

If the suspension of specie payments, even for the most salutary purposes, would work a forfeiture of the charter of a bank, without any provision in its charter to that effect, not a bank in the Union, south of Boston, would have survived the termination of the late war. Every banking institution

[a] The People v. Washington and Warren Bank, 6 Cowen 215, 219.

5

JULY 1829.

The State
v.
Tombeckbee
Bank.

a Laws of Ala.
page 62.

south of Massachusetts found it necessary, in those times of trouble and danger, to suspend specie payments; and continued that suspension till the year 1817. At the latter period, they resumed specie payments, and no one, however desirous to promote the public weal, ever questioned the right of any of them to continue as a corporation.

It is said, that by the act of the 17th December, 1821,[a] power is given to declare the charter forfeited. According to the decisions of this Court, and indeed all Courts whose decisions deserve respect, this charter, or this contract, cannot be affected by this act; it is the act of one of the contracting parties, without the consent of the other; therefore the power given by it is void; and it cannot authorize this Court to declare the charter forfeited, and the corporation dissolved. The passage of this act amounts indeed to an admission on the part of the State, that the suspension of specie payments is not, according to the bank charter, a cause of forfeiture; and that it does not work a dissolution of the corporation: for if such was the case, where is the necessity of this act? It is then an admission, that the power the State now seeks to exert over the corporation, was not reserved to it by the act of incorporation; and by the immutable law of right, that act could not give to one of the contracting parties, this power over the rights of the other. It does not therefore exist.

The 6th rule regulating the establishment of banks, contained in the constitution of Alabama, is in the following words; viz: "In case any bank or branch bank shall neglect or refuse to pay, on demand, any bill, note or obligation, issued by the corporation according to the promise therein expressed; the holder of any such note, bill or obligation, shall be entitled to receive and recover interest thereon, until the same shall be paid, or *specie payments are resumed* by the said bank, at the rate of twelve per cent per annum, from the date of such demand; unless the General Assembly shall sanction such suspension of specie payments; and the General Assembly shall have power, *after such neglect* and refusal, to adopt such measures as they may deem proper, to protect and secure the rights of all concerned, and to *declare the charter of such bank forfeited.*" It is manifest, from this part of the constitution, that the convention did not consider the charter of any bank in this State forfeited by a suspension of specie payments. They knew they had no power over any bank which then existed. By virtue of this provision, the charter of a bank,

even subsequently established, could not be declared forfeited by virtue of any law passed anterior to the suspension of specie payments.

The contract made by the Legislature with the Huntsville Bank, and the consideration given for the amendment of the charter, after the suspension of specie payments, is conclusive evidence that the charter was not forfeited by virtue of any provision in its charter, nor yet by the act of 1821. Nor can this last mentioned act, as it affects to do, dispose of the "effects, rights and credits" of the Bank. When a corporation is dissolved, its "effects, rights and credits," go with it to eternity. The proceeding, therefore, which seeks to dissolve the corporation of the Tombeckbee Bank, tends to inflict on the community irreparable injury. When the corporation is once dissolved, all the debts due from it are paid; its notes necessarily die in the hands of the holder. We therefore advocate the interest of the community as well as maintain the rights of the institution.

The act of 1821 does not however apply to the Tombeckbee Bank, and the proceeding instituted against it is founded in error. The third section of the act provides, that "if any incorporated bank within this State, shall not at the expiration of six months after the passage of this act, make regular specie payments for any of the bills or notes it may have issued, the Governor of the State shall give information of the fact to the Solicitor of the Circuit in which the Bank may be situated, directing him forthwith to proceed against the said bank, on a writ of quo warranto." If therefore, the Tombeckbee Bank did, at the expiration of six months after the passage of the said act, pay specie, it is not embraced by the act; and is not liable to the forfeiture which it attempts to impose. It is a fact, that the said Bank did on that day pay specie; and nothing to the contrary is alleged in the record. The penalty is not therefore incurred. It is not for us or the Court to say why the Legislature passed such an act. They have passed it, and it is the province of this Court to construe it. The words are plain, and admit of only one interpretation. If the Bank paid specie at the expiration of six months from the passage of said act, it is exempt, according to the terms of the act, from the penalties which it attempts to impose. If the words were doubtful, the Courts duty would be rather to restrict, than to extend the operation of so penal a statute.

But it is to be supposed, that the Legislature intended that the act should conform to the provisions of the constitution

JULY 1829.

The State
v
Tombeckbee
Bank.

in relation to the dissolution of any bank which might be established under it. Those provisions authorized the Legislature, as has been stated, by an act *passed after the suspension of specie payments* by any bank thus established, to declare the charter of such bank forfeited. The constitution did not authorize the Legislature, nor did they intend, by any law passed before the suspension of specie payments, to deprive any bank of its charter.*

KELLY, argued in reply.

By JUDGE CRENSHAW. This was a proceeding on a *quo warranto*, calling on the Tombeckbee Bank to shew cause why its charter should not be adjudged to be forfeited; on the grounds: 1st, Because the Bank has failed to pay specie on demand for its notes; 2d. Because the bank has, on loans and discounts, taken more than six per cent per annum; And 3d. because the Bank has neglected to elect annually thirteen directors. The second and third grounds have been abandoned. The first, is alone relied on; and is now urged as sufficient to reverse the judgment which was given *pro forma* in favor of the Bank.

In the creation of every corporation, it is implied in law, that a *misuser*, or *nonuser*, shall effect a forfeiture of the charter. It is therefore important to inquire, whether a failure to pay specie is such a *misuser*, or *nonuser*, as will work a forfeiture of the charter. The act of incorporation has not so declared it, it is not so expressed by the letter of the act, nor can it be fairly inferred by implication.

*6 Cowen. 215. 219.*

The Supreme Court of New York[a] has decided, that the suspension of specie payments is no cause of the forfeiture of a bank charter, unless a provision to that effect be inserted in the charter.

The refusal to pay specie was a contingency contemplated by the act of incorporation; and was provided for by authorizing suits as well against the stockholders as against the corporation. The Legislature therefore, at the time of its creation, did not consider this as a cause of forfeiture. The act of incorporation was in the nature of a

---

* The argument of the counsel for the Bank, on the charge of taking more than six per cent interest, is omitted, as that point was abandoned by the counsel for the State. The authorities cited by them on this point were, 2 Blk. Rep. 865; 1 Bos. and Pull. 151; 1 Saunders 295; 19 Johnson 500; Cro. Car. 501; 2 Ventr. 83, 107; Cro. Jac. 678; 1 Campbell 149; Wright v. Elliott, 1 Stewart's Rep. 391; Lyon v. The State Bank, 1 Stewart 442.

contract between the State and the corporation, and it was incompetent to the Legislature, by any subsequent act, to annex new conditions, not expressed in the charter.

In the case of *Logwood against the Huntsville Bank*, decided in this Court, at a former term,[a] it was declared that a bank charter is in its nature and effect a contract, and that its terms cannot be varied or altered by either of the contracting parties, without the consent of the other. In that case, the Court says, "that any attempt to alter or abridge the provisions of the charter, without the consent of the individuals composing the corporation, would not be valid. And so long as it confines itself to the provisions of the grant, it is independent of legislative control."

The act therefore, of December, 1821, has no application to the case before us. That act provides, that if any incorporated bank within this State, shall not at the expiration of six months after the passage of the act, make regular specie payments, it shall produce a forfeiture of the charter, &c. This act cannot affect the bank charter, because the act was passed subsequently to granting the charter, without the consent of the members of the corporation; and annexed a cause of forfeiture which was unknown to the charter.

It might also with some plausibility be contended, that the section of the act relied on has long since expired by its own limitation; that the act intended to give the banks of the State, six months from its passage, in which to resume specie payments, and if at the expiration of six months they failed to pay specie, the charter would become forfeited. But it is not necessary to resort to a construction of this act in order to attain a correct conclusion in the case under consideration.

The Court are unanimous in the opinion, that a failure to pay specie, does not, by the terms of the act of incorporation, amount to a forfeiture of the charter; nor is it implied by the general law, as applicable to corporations: That the act 1821, relied on, having annexed a cause of forfeiture unknown to the act of incorporation, and without the consent of its members, cannot bind the corporation.

Judgment affirmed.

The CHIEF JUSTICE and Judge SAFFOLD not sitting.