Brinsfield *vs.* Carter.

No. 20. — Thomas Brinsfield, plaintiff in error *vs.* Littleberry Carter, defendant in error.

[1.] The Act of 21st December, 1843, authorizing grants to issue to certain persons on the conditions therein stated, for any ungranted lot of land in the several counties mentioned therein, is constitutional.

[2.] The omission of the word "grant" in one section of a statute may be explained, by other parts of the same statute, so as to supply the omitted word and give the act its intended effect.

[3.] The Statute of limitations does not run against the State.

Ejectment. Brought by John Doe on the demise of Littleberry Carter, who is the defendant in error, against Richard Roe, casual ejector, and Thomas Brinsfield, who is plaintiff in error, as tenant in possession. In Muscogee Superior Court, and tried before Judge Alexander. November Term, 1846.

For the facts of the case, see the opinion of the Supreme Court.

Jones, Benning & Jones, A. Iverson and G. E. Thomas for the plaintiff in error.

Mr. Benning for the plaintiff in error, submitted the following points and authorities:

1. By the mere fact of drawing a prize in the Land Lottery of 1827, the drawer acquired a legal title to such prize. *Daws. Comp. Act No.* 716, *the title, secs.* 11, 21, 12; *Act No.* 726; *do. No.* 723, *sec.* 10; *Do. No.* 741, *sec.* 1; *Act of* 1843, *Pamph.* 68, *sec.* 5; *Prince* 213, 565; *Jones & Parsons' Heirs* vs. *Inge & Mardis' Heirs,* 5 *Porter,* 327; *Rosser* vs. *Bradford,* 9 *Porter,* 354.

2. This title was one founded in contract between the State on the one part and the drawer on the other. *Same Act No.* 716, *sec.* 15; 1 *Kent,* 414 *et. seq.; New Jersey* vs. *Wilson,* 7 *Cranch; Zerrett* vs. *Taylor,* 9 *do.* 43; *Dartmouth College* vs. *Woodward,* 4 *Wheat.* 518; *Green* vs. *Biddle,* 8 *do.* 1.

3. It is implied in every contract that the parties agree to be bound by the law of the land pertaining to it then in force. 16 *Johns.* 233; *Lex Loci passim;* and by that law the condition of forfeiture on non-payment of the grant fee, was a security for the fee and not a limitation of the estate. 2 *Story's Equity Jur. secs.* 1018, 1311 to 1315, 1316, 1319, 1321, *Law of Mortgage and Bonds;*

*White* vs. *Sealy, Doug.* 49; *Ld. Lonsdale* vs. *Church,* 2 *T. R.* 388. And by that law a grant issued to any one but the drawer before forfeiture *by office found,* was void. 2 *Black. Com.* 258; *Angell & Ames on Corporations,* 503.

4. An act, which both treats the condition, not as a security, but as a limitation, and authorizes a grant to be issued to another than the drawer, before forfeiture of his draw by office found, impairs the obligation of the contract, and is void. Such an act is the Act of 1843.

5. But again.— The power to determine the question whether any wrong has been done, be it *ex contractu* or *ex delicto,* involving as it does both law and fact, is a power properly attached to the judiciary and cannot be exercised by either of the other departments unless expressly given to it. *Cons. Ga. art.* 1, *sec.* 1.

6. The Legislature by the Act of 1843, adjudged and "considered" the effect to the drawer of not taking out a grant by a specified day, and it authorized the Governor, or he acted without authority, to try the fact whether the fee remained unpaid, or to assume that it did, and *thus exercised a power properly attached* to the judiciary, to do which was unconstitutional. *Act of* 1843, *Pamph.* 67.

7. This power is not only one properly attached to the judiciary, but one which has actually been attached to it generally, by the provision making jury trial inviolate, and specially, by that clothing the Superior Court with *exclusive* jurisdiction in all cases respecting titles to land. *Cons. Ga. art.* 4, *sec.* 5, *art.* 3, *sec.* 5; 2 *Black. Com. inquest of office,* 258.

8. The Act itself of 1843, is void for ambiguity patent on the face of it. *Pamph.* 1843, 67, *sec.* 3; and for that it is a revenue act and originated in the Senate. *Journal of Senate,* 1843: 49, 121, 172, 277, 296, 315, 355.

H. HOLT & PERRYMAN, for the defendant in error. Mr. Holt was stopped by the Court.

Mr. THOMAS, in conclusion for plaintiff in error.

The contest arose in this case between the claim of the original drawer and those claiming under him, and the lessor of the plaintiff who held under grant from the State of Georgia, authorizing the taking out of grants to forfeited draws, by any person other

than the drawer after a given time, passed in 1843. *See Acts* 1843, 67, 68. The counsel for the plaintiff in error, insist before the Court, that the defendant in error should fail to recover upon two grounds, viz: 1st. That the said Act of 1843 is *unconstitutional*, as it *impairs* the obligation of the private contract entered into by the State with the drawer of the lot in dispute, he having obtained vested rights under that contract, and which rights could only be divested by a competent judicial tribunal authorized to hear and determine the same, and not by an act of the Legislature, *Acts* 1825, 1826, *Dawson's Compilation*, 253, 259; and then not without adequate compensation on the part of the State to the drawer. And in support of this ground they read the acts of the Legislature, known as Lottery Acts, passed in 1825, and 1826, found in *Dawson's Compilation, pages* 253, 259; *and* 3 *Story on the Constitution*, 250, 661, *found in the 5th art. of the Constitution amended U. S. A.; see particularly* 9*th section of the Act of* 1826. The counsel for plaintiff in error, insist upon the Statute of limitation as barring the right of the plaintiff to recover under this grant. It is not denied that the facts of the case make out such a defence most clearly, if the law of the case is with the defendant; for the defendant and those under whom he claims, have been for more than seven years previous to the commencement of said action, in the quiet and peaceable possession of said lot of land, under color of title; holding deeds of conveyances from the drawer successively down to the defendant: and they read the Act of limitation of Georgia found in *Hotchkiss' Dig*. 539. Also, insist that the Common Law maxim, "*nullum tempus occurrit regi*," does not hold in this country, because it is repugnant to our constitution, laws and form of government. *Hotchkiss*, 93; *Prince*, 570; *Acts* 1784. And read from 12 *Petersdorf Abr*. 331, the case of *Rev* vs. *Morrall*, to show that even in England, the statute would create a bar; the case, being now since the issuing of the grant, between citizen and citizen, and not between the sovereign and the subject. The plaintiff's counsel also read, the case of *Mayor of Hull* vs. *Horner*, 1 *Cowper*, 102 *to* 110. In a case like the one at bar, supported in principle by the last case read, the Court may well presume that such long and quiet possession was founded on a grant. *Id.* 1 *Cowper*, 110.

19

Brinsfield *vs.* Carter.

*By the Court*—WARNER, J. delivering the opinion.

This was an action of Ejectment, instituted by the plaintiff as the lessee of Littleberry Carter, against the defendant, to recover the possession of a lot of land number 70, in the 9th district of Muscogee County, and was tried at the last November Term of Muscogee Superior Court.

The plaintiff introduced in evidence a grant from the State of Georgia, bearing date on the second day of July, 1845, to the lessor of the plaintiff, Littleberry Carter, for the premises in dispute. This grant was made to Carter in pursuance of an act of the Legislature, passed on the 21st December, 1843, on the terms and conditions stated in that act. Plaintiff then proved the tenant, Thomas Brinsfield, in possession of the premises, and the yearly value of the rent, and closed his case.

The defendant, under his plea of the general issue, and the Statute of limitations, introduced in evidence a deed to the premises, from one Alva Perry and Simon Perry, to one John Scurlock, dated 4th March, 1837, and a deed from Scurlock to one Bedford B. Brinsfield, dated 15th January, 1844, which deeds had been duly registered in the County of Muscogee. It was admitted that the land was not drawn by Carter, to whom the grant issued; but who was the fortunate drawer the record does not inform us. It was also admitted that the Perrys were in possession of the premises before and at the time of making the deed to Bedford B. Brinsfield, and that the defendant, Thomas Brinsfield, was the tenant of Bedford B. A verdict was found for the plaintiff, and the case now comes before us on a bill of exceptions and writ of error to the decision of the Court below. The errors assigned by the plaintiff are, first, because the Court below refused to charge the jury that the quiet and peaceable possession of the premises by the defendant, and those under whom he claims, holding adversely under color of title for seven years next before the commencement of the action, was a bar to said suit. Second, because the Court refused to charge the jury that the Statute of 1843, under which the grant to the plaintiff was issued, was unconstitutional. Third, because the Court refused to charge the jury that the said Act of 1843 conveyed no right to the plaintiff, inasmuch as the word "grant" is omitted in the body of the act.

[1.] We will proceed to consider the second ground first, which involves the constitutionality of the Act of 1843.

That the premises in dispute were originally the property of the State is admitted, but it is contended on the part of the plaintiff in error, that the Legislature of the State, by an act passed on the 9th June, 1825, entitled, "An act to dispose of and distribute the lands lately acquired by the United States for the use of Geogia, &c." vested a right in the drawer of the lot in dispute; and that the Act of 1843, authorizing a grant to issue to the plaintiff, *impairs* and *destroys* that right. That the Act of 1825 was a *contract* between the State and the drawer of the lot, which the Legislature of 1843 could not, under the constitution, impair or defeat. If the drawer of the lot in question, by the act of giving in his name for a draw in the land lottery, added to the fact, that the lot was a prize drawn to his name, constituted a contract by which he became entitled to a *vested right* in the same, without any other act to be done by him, then the position of the plaintiff in error is well founded in law ; and it was not competent for the Legislature, in 1843, to divest him of that right and authorize the grant to issue to another. Let us now examine the Act of 1825, and see what rights the drawer acquired under it to the lot of land drawn to his name. The 15th section of the act provides for the appointment of persons to take in the names of persons for draws in the land lottery, and that the persons taking in such names shall receive twenty-five cents from each applicant for each draw. *Dawson's Comp.* 255. The 18th section of the act provides the manner of conducting the lottery. The 21st section of the act declares, "that all persons who may draw lands under this act shall be entitled to receive grants for the same, conveying fee simple titles, on paying into the treasury of this State the sum of eighteen dollars; and any person drawing, *and failing to take out his grant within two years from the date of said draw, shall forfeit his or her right to receive a grant to the land so drawn, and the same shall revert to the State."* *Dawson's Comp.* 256.

Admit the position assumed by the plaintiff in error, that the act of the Legislature is a *contract*, what sort of a contract is it? what are its terms and obligations, and what rights does it confer upon the drawer ? We must take into consideration *all* the terms and stipulations of the contract. The act declares, if the citizen will give in his name to the person appointed, and *pay him,* not the State, twenty-five cents, he shall have a chance to draw a lot of land in the land lottery; at the same time the act declares to him, if you draw a lot you will be entitled to receive a grant for the

same, conveying to you a fee simple title thereto when you pay into the treasury of the State the sum of eighteen dollars, but if you do not pay the same within two years from the date of the drawing, you forfeit your right to receive a grant to the land drawn to your name, and the same shall revert to the State. When he became a party to the contract by giving in his name, he stipulated that if he should draw a lot of land, and fail to pay into the treasury the sum of eighteen dollars within the time prescribed, and obtain a grant to the land, the same should revert to the State. That is to say, *all his right to have a grant issued to him* under the act, should revert to the State; for the title to the land was in the State until it passed out by grant. Viewing it in the light of a contract between the drawer and the State, he having failed to comply with the terms of it on his part, no right to the land vested in him, but his right to have a grant issued to him was forfeited, by the express terms of the contract itself; consequently, no right was violated or impaired which he had to the land under the contract, by the passage of the Act of 1843. An argument was advanced by the plaintiff in error that the Act of 1825 required the drawer to pay taxes for the land; that, also, was a part of the contract. He was to pay taxes for the land drawn, whether granted or not, until he should relinquish the same in writing to the use of the State. But, we apprehend, when he forfeited his right to the grant by failing to comply with the terms of the contract within the two years, he was as perfectly released from paying taxes for it as he would have been by a relinquishment in writing. In the one case he could release himself from paying taxes by an immediate relinquishment in writing, in the other he could pay the taxes for two years, and his right was forfeited by the terms of the act, and no relinquishment was necessary; the inchoate right of the drawer to a grant was then abandoned to the State by his own act, and in the manner stipulated in the contract, if it is to be considered a *contract*.

The land then belonging to the State, it was competent for the sovereign power of the State to dispose of it, as was done by the Act of 1843. Nor has the drawer any just cause of complaint against the State for making such disposition, Instead of enforcing the forfeiture incurred by the drawer in not complying with the terms of the Act of 1825, at the end of the two years, the Legislature not only reduced the price of the grant fee to a mere nominal sum, but extended the time, from year to year, until the

first day of October, 1844; thereby giving him every opportunity to comply with the terms of the act, if he had not voluntarily abandoned his rights under it, as it was his privilege to do.

The argument for the plaintiff in error assumes the ground, that the State had parted with her sovereignty over the land in question, and insists that she had no right to resume it until after an inquest of office, or until after office found, according to the rule of the Common Law. We place our decision on the ground, that the State never intended, nor did not, by either of the Acts of 1825 or 1826, part with her sovereignty over any portion of her territory until the same was *actually granted*, in the manner prescribed by those acts. If the State had once parted with her sovereignty over the land in question, by grant to one of her citizens, and afterwards it became the property of an alien by purchase, or had escheated, the State could not have resumed her right of sovereignty over it until after office found in her favour. The Common Law rule applicable to the Crown in Great Britain, would apply to the State in this country. But the State is not attempting by the Act of 1843 to re-invest herself with title to land with which she has once parted, she is only exercising her sovereign authority to dispose of lands which originally belonged to her and which have never been granted to any body; a part of her eminent domain. In this view of the question, it was competent for the General Assembly to direct the manner in which the same should be disposed of. The second section of the Act of 1843 notifies all parties interested, who may be disposed to avail themselves of the privilege of partaking of the bounty of the State under the provisions of the several Land Lottery Acts, to come forward and obtain grants from the State, on or before the first day of October, 1844. The third section of the act provides that after the first day of October, 1844, any citizen of this State, by paying into the treasury certain sums of money therein specified, shall be entitled to receive from the State, in his, her, or their name, a grant to any ungranted lot of land in any of the specified counties. *Hotchkiss' Dig.* 143. The lessor of the plaintiff obtained his grant under this act, which for the reasons already given, is not in our judgment a violation of the constitution. It is however worthy of remark, that in this case the defendant is not the *drawer* of the lot of land, nor does the record disclose the fact that he derives his title through or from *the drawer;* consequently, the rights claimed for the drawer, or for persons claiming

title through him, if well founded, could not properly attach to him, who is a *stranger* to the drawer. As it regards the question of notice which was urged in the argument, we have only to say, if any was necessary, the Act of 1843 was a public statute of which all the people of this State were bound to take notice.

[2.] It is true the word "grant" is omitted in the third section of the Act of 1843, but it is our duty to give effect to the statute, provided it can be done without a violation of any legal rule. When we take into consideration the intention of the act as derived from its caption as well as the subject matter, as appears from the other sections of the statute, and calling to our assistance the word "grant," as applied in the other parts of the act, we are of the opinion the omission of the word "grant" in the third section is sufficiently explained. The fourth section provides where two or more persons apply for the same lot at the same time, the Surveyor General shall place each name of all applicants in a hat, and the first name drawn out shall be entitled *to the grant*, on paying into the treasury the sum before recited, &c. What grant? the grant contemplated by the third section, which declares "that from and after the said first day of October, 1844, any person, a citizen of this State, by paying into the treasury the sum of two thousand dollars shall be entitled to receive from this State, in his, her or their name, to any ungranted lot of land in the counties aforesaid. The word "grant," is evidently an omission by mistake, or a mere clerical error which does not make void the statute, and the Court below did not err in so ruling.

From the view which we have already taken of this question, it will be perceived we hold the title to the lot of land in question was in the State, until granted under the authority of the act of 1843, on the 2d day of July, 1845, to the lessor of the plaintiff.

[3.] We are also of the opinion that the Statute of limitations did not run against the State. In England the King is not bound by the Statute of limitations, for no laches can be imputed to him. The maxim is *nullum tempus occurrit regi.* This is a privilege which attaches to the Sovereign. The people cannot attend to their rights except through their officers; therefore they ought not to suffer by the lapse of time, or the negligence of those officers. 1 *Bla. Com.* 247; *Ball. on Limit.* 18; *Bagley et al.* vs. *Wallace,* 16 *Sergeant &Rawle, R.* 245, 250; *The People* vs. *Gilbert,* 18 *John. R.* 227.

In Stoughton et al. vs. Baker et al. Chief Justice Parsons says: " No laches can be imputed to the Government, and against it no time runs so as to bar its rights." 4 Mass. R. 528. In Lindsey et al. vs. The lessee of Miller, Mr. Justice McLean, delivering the opinion of the Court, thus expresses himself. "It is a well settled principle, that the Statute of limitations does not run against a State. If a contrary rule were sanctioned, it would only be necessary for intruders upon the public lands to maintain possession until the Statute of limitations shall run, and then they would become invested with the title against the Government, and all persons claiming under it. In this way the public domain would soon be appropriated by adventurers. It is only necessary, therefore, to state the case, in order to show the wisdom and propriety of the rule, that the statute never operates against the Government." 6 Peters R. 673. From the best consideration which we have been enabled to give this case, we are of the opinion that there is no error in the record, and that the judgment of the Court below should be affirmed.