NEW ORLEANS WATER-WORKS CO. *v.* ST. TAMMANY WATER-WORKS CO. and another.*

*(Circuit Court, E. D. Louisiana.   September, 1882.)*

1. JURISDICTION OF CIRCUIT COURT.

The circuit court of the United States has jurisdiction in a case where its correct decision depends on the construction of a section of the constitution of the United States.

*Railroad Co.* v. *Mississippi*, 102 U. S. 141, followed.

2. CORPORATIONS—EXCLUSIVE RIGHTS—IMPAIRMENT OF CONTRACT.

The complainant, the New Orleans Water-works Company, having been chartered, in 1877, by the legislature of Louisiana, the exclusive right and privilege was then conferred on said company of supplying the city of New Orleans with water by a system of public water-works.   In 1879 a new constitution was adopted by the state, by which it was provided, in section 258, that "the monopoly features in the charter of any corporation now existing in the state, save such as may be contained in the charters of railroad companies, are hereby abolished."  *Held*, that *quoad* the complainant's charter, the said constitutional provision was null and void, under section 10 of article 1 of the constitution of the United States, as impairing the obligations of the contract between the state and the complainant, as set forth in the latter's charter.

3. POLICE POWER.

Whenever any business, occupation, rights, franchises, or privileges become obnoxious to the public health, manners, or morals, they may be regulated by the police power of the state, even to suppression,—individual rights being compelled to give way for the benefit of the whole body politic; but when, in the exercise of the police power, private property or private vested rights must be taken for public use, in order to carry out, or allow to be carried out, improvements or regulations, or to carry on business or occupations, or schemes of public works, looking to the amelioration and benefit of the public health, manners, or morals, such private property, or private rights of property, must be entitled to the protection given by the constitution of the United States, and by that of the state of Louisiana, declaring that private property shall not "be taken for public use without just compensation," and "previously made."

Const. U. S. Fifth Amend.; Const. La. 1879, §§ 155, 156; *Crescent City, etc., Slaughter-house Co.* v. *Butchers' Union, etc., Slaughter-house Co.* 9 FED. REP. 743, affirmed.

In Equity.   On application for an injunction *pendente lite.*

E. H. *Farrar* and J. R. *Beckwith,* for complainant.

G. L. *Hall,* T. L. *Gill,* and C. F. *Buck,* City Atty., for defendants.

PARDEE, C. J.   The hearing is on the bill, exhibits, and affidavits. The case as made shows—

That in March, 1878, and for years prior thereto, the city of New Orleans was the owner and in possession of a system of water-works for the supplying of the said city, and the houses and inhabitants thereof, with water, ac-

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.
Affirmed. See 7 Sup. Ct. Rep. 405.

quired from the Commercial Bank of New Orleans under grants and legislation of the state giving the said city the necessary authority and privilege therefor exclusively forever.

That the said city was embarrassed in the financial management thereof, and was indebted therefor in the large sum of $1,393,400, which indebtedness was represented by outstanding bonds issued by the city, running 40 years from date and bearing 5 per cent. per annum interest, known as the "water-works bonds."

That in 1877, in order to relieve the said city from its embarrassment growing out of its indebtedness, the legislature of the state of Louisiana, at an extra session held in that year, passed and adopted an act entitled "An act to enable the city of New Orleans to promote the public health; to afford greater security against fire by the establishment of a corporation to be called the New Orleans Water-works Company; to authorize the said company to issue bonds for the purpose of extending and improving the said works, and to furnish the inhabitants of the city of New Orleans an adequate supply of pure and wholesome water, and to permit the holders of water-works to convert them into stock and to provide for the liquidation of the bonded and floating debt of the city of New Orleans."

That said act provided that a corporation be created, to be known as the New Orleans Water-works Company, and among other things provided that the holders of the "water-works bonds" might convert them into the capital stock of the said company, and that, when so converted, the said bonds should be surrendered and canceled; that there should be issued to the city of New Orleans stock amounting to the sum of $606,600, in full-paid shares of stock, and an additional full-paid share of stock to every $100 of the said "water-works bonds" which she had paid, taken up, or funded, and that for the purpose of carrying out the provisions of the act all of the certificates for all of the stock in the said company should be issued to the city of New Orleans; one set of certificates, equal in value and amount to the then outstanding par value and amount of the said "water-works bonds," being held by the city to be exchanged for the said bonds, with the holders thereof, and the other set of certificates being held by the said city in her own right and in trust for the holders of all her other bonded and floating indebtedness.

And that it was also provided in the said act that the said water-works company should be organized by the mayor of the city giving 30 days' notice that he would receive subscriptions of bondholders who may agree to exchange their said bonds for the stock aforesaid, and that the city should subscribe to the amount of her interest and the bonds redeemed or funded by her, as soon as the sum of $500,000 in par value should have been subscribed by the holders of the water-works bonds, and the bonds surrendered and canceled as provided in the act, and that thereupon the company should be organized with a board of directors,—four to be appointed by the mayor of the city, and three to be appointed by the stockholders other than the city,

That all the conditions and provisions of said act were accepted and complied with by said city, and by the holders of said "water-works bonds," who made the subscriptions required by the act, in manner and form as required, so that on the ———— day of March, 1878, the said company was duly organ-

·ized, and thereupon said company agreed to and accepted all of the conditions ·of the said act, as well as those of an amendatory act passed February 26, 1878, the provisions of which it is not necessary to recite, whereby the complainant became and was vested with corporate character, and with all the ·rights, and privileges granted by the said act No. 33, Ex. Sess.' 1877, and the ·amendatory act thereto of 1878; and thereupon the city of New Orleans, as provided by the said acts, did by notarial act transfer, set over, and grant unto complainant all its rights, title, and interest in and to the water-works in said city, as it had acquired the same from the Commercial Bank of New Orleans, and all subsequent additions thereto.

That by reason of the premises the complainant became and was vested with full and absolute and complete title to all the said water-works, and to all the privileges acquired by the city of New Orleans from the Commercial Bank of New Orleans, and the exclusive right of supplying the city of New Orleans and its inhabitants with water from the Mississippi river, and any other stream or river, by means of pipes or conduits, and the right of con_structing any necessary works, engines, or machinery for that purpose, for the period of 50 years from and after March 31, 1877.

That the said act No. 33 of 1877, aforesaid, also conferred upon complainant the right to increase the capital stock of the corporation, and to borrow money for the purpose of improving and enlarging its works, etc., and for this latter purpose complainant was authorized to issue bonds of the company to an amount not exceeding $2,000,000, and in such sums and on such terms as the complainant might determine, securing the same by mortgage on all the property and franchises of the complainant, acquired and to be acquired; but the said bonds were not to be issued nor disposed of except upon the consent and approval of the council of the city of New Orleans.

' That for the purpose of enlarging and improving the water-works, and in compliance with said act, complainant has expended large sums of money, and has, with the consent and approval of the council of said city of New Orleans, made, issued, and disposed of a large amount of bonds, secured by mortgage on its franchises and works, and has received the proceeds thereof and devoted them to the enlargement and improvement of the works, to supply the said city and its inhabitants with water.

That complainant has in all things acted in good faith; that it accepted the terms and conditions of said act of the legislature only after having obtained the full consent of the city of New Orleans; that complainant supposed that it was obtaining the full and exclusive right and privilege of supplying the city of New Orleans with water by a system of public water-works, to the exclusion of all other companies, otherwise complainant would never have accepted the terms and provisions of the said act of the legislature.

That it was by reason of the exclusive right so as aforesaid granted that complainant was able to borrow money and negotiate the said bonds.

That in order to continue to comply with the terms of and provisions of said act, and make the water-works competent to an adequate supply of water in said city of New Orleans, complainant will be compelled to borrow large· sums of money to be expended thereon; and that unless the exclusive rights and privileges of. complainant are protected and preserved, complainant will

be absolutely without credit or means to borrow money or negotiate bonds to carry on the necessary enlargement and improvement of the water-works.

That by reason of the premises the city of New Orleans and the state of Louisiana became and were obligated in equity and good conscience to warrant, maintain, and protect complainant in the full right and exercise of its exclusive rights and privileges aforesaid, and that the obligations of a contract grew up and were created between the said state and city and complainant, which contract, it is claimed, was and is sacred under and by virtue of section 10 of article 1 of the constitution of the United States.

That the new constitution of the state of Louisiana, adopted in December, 1879, article 258, provides that "the monopoly features in the charter of any corporation now existing in the state, save such as may be contained in the charters of railroad companies, are hereby abolished."

That the defendant company has been lately incorporated under the general incorporation law of the state, with the avowed purpose of establishing a system of water-works to supply the city of New Orleans and the inhabitants thereof with water in competition with complainant, and are holding out and pretending that by virtue of said provision of the constitution of 1879, and of their act of incorporation, and the privileges they will obtain from the council of the city of New Orleans, they have full right and will establish a competing system of water-works in said city.

The defendant has obtained an act of Congress authorizing the laying of pipes and mains across Lake Pontchartrain, and has applied to the council of the city of New Orleans to pass ordinances giving the right to said defendant to establish competing water-works, and lay down in the streets of the city pipes and mains to that end.

That it is probable the members of the city council will collude with the said St. Tammany Water-works Company, and pass some ordinance or ordinances granting rights and privileges to said St. Tammany Water-works Company in conflict and in competition with the rights of complainant.

That the proceedings and pretensions of the defendant have already injured the complainant, and if continued will undoubtedly inflict irreparable damage.

The bill herein is filed to protect complainant's rights by enjoining the defendants from further action in the premises. As to the pending matter, the issuing of an injunction *pendente lite,* the case seems so narrow that counsel have argued but two questions, *i. e.*:

(1) Has the court jurisdiction? (2) Does the constitution of the United States, § 10, art. 1, protect the complainant against the repeal of the monopoly features of its charter, as declared in article 258 of the constitution of the state of Louisiana, adopted in 1879?

The statement of the second question seems to dispense with argument as to the first. No question could more clearly show "a matter in dispute, arising under the constitution of the United States." And in such a dispute original jurisdiction is given the

circuit courts of the United States by the act of March 3, 1875. The complainant has no case if the article 258 of the Louisiana constitution of 1879 has the force and effect that its terms import. The defendant, the St. Tammany Water-works Company, has no defense to the complainant's case unless article 258 of the Louisiana Constitution has the force and effect of repealing the exclusive features of complainant's charter. Said article undoubtedly has such force and effect, except in so far as it is in violation of the tenth section of article 1 of the constitution of the United States. Thus a question is at once raised as to the construction, force, and effect of an article of the federal constitution, and such question seems to be decisive of the issue between the parties.

The following propositions are declared by the supreme court to be now too firmly established to admit of or to require further discussion:

"That a case in law or equity consists of the right of one party as well as of the other, and may properly be said to arise under the constitution or a law of the United States, whenever its correct decision depends on the construction of either. That cases arising under the laws of the United States are such as grow out of the legislation of congress, whether they constitute the right or privilege or claim or protection or defense of the party in whole or in part by whom they are asserted. That except in the cases of which this court is given by the constitution original jurisdiction, the judicial power of the United States is to be exercised in its original or appellate form, or both, as the wisdom of congress may direct. That it is not sufficient to exclude the judicial power of the United States from a particular case that it involves questions which do not at all depend on the constitution or laws of the United States; but when a question to which the judicial power of the Union is extended by the constitution forms an ingredient of the original cause, it is within the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it." *Railroad Co.* v. *Mississippi*, 102 U. S. 141.

It would seem, then, that the court has jurisdiction and will be called on to proceed with this case—to determine all issues of law and fact that may be raised therein. Ought an injunction to issue pending such determination? The showing made is to the effect that the proceedings of the defendants are very injurious to the complainant in depreciating its stock and bonds, and directly lowering, if not ruining, its credit, in hindering and obstructing complainant in carrying on and carrying out the extensive works and improvements it is charged with by the legislature of the state. Whether this is being done rightfully or wrongfully is the real issue in the case. The

*prima facie* showing is against its being rightfully done, and therefore there is a *prima facie* showing for the issuance of an injunction.

The learned counsel who have appeared for the St. Tammany Water-works Company have very ably and learnedly urged that the question of supplying the inhabitants of a great city with water was one arising under, and under the control of, the police power, and therefore could not be the subject of a contract within the protection of the federal constitution. This proposition may be taken for granted, so far as this case is concerned at this time, and yet not affect the matter before the court. There is no suggestion in this record that the police power of the state has been directed against the complainant, or that any portion of it has been delegated to the St. Tammany Water-works Company. So far as this record shows, or the court is advised, the last exercise of the police power of the state in relation to the supplying of water to the inhabitants of the city of New Orleans was when the sovereign in the state clothed the complainant with the powers, privileges, rights, and duties it is now asking the court to protect. Certainly it cannot be pretended that the last clause of article 258 of the state constitution has delegated anything in the way of inaugurating and maintaining public water-works in the city of New Orleans to the defendants.

In the *Slaughter-house Case,* decided at the November term of this court in 1881, reported in 9 FED. REP. 743,—a case identical in principle with this,—there had been a delegation of power to regulate slaughter-houses, etc., to the city authorities, (see article 248 of the Louisiana constitution of 1879,) and the city authorities had acted in the premises. In that case the same authorities (*Beer Co.* v. *Mass.* 97 U. S. 25; *Fertilizing Co.* v. *Hyde Park,* Id. 677; *Stone* v. *Miss.* 101 U. S. 814) as are cited here were examined, and their inapplicability shown, and both the circuit judge and district judge, in separate opinions, decided in favor of the jurisdiction and of granting an injunction.

I am still disposed to adhere to that decision, and I regard the case under consideration as equally strong on the question of jurisdiction and much stronger on the facts. And here I desire to remark that there seems to me to be a great misapprehension as to the force and effect and proper exercise of the police power of a state. Its power and far-reaching effect may perhaps not be measured by general rules and definitions, and each case as it arises may have to be determined on its own particular facts and circumstances.

It seems, however, to be clear to me that regulations pertaining to the public health, manners, and morals come within its jurisdiction, and that, therefore, whenever any business, occupation, rights, franchises, or privileges become obnoxious to the public health, manners, or morals, they may be regulated even to suppression, individual rights being compelled to give way for the benefit of the whole body politic.

It seems equally clear to me that when, in the exercise of the police power, private property, or private or vested rights, must be taken for public use in order to carry out, or allow to be carried out, improvements and regulations, or to carry on business or occupations, or schemes of public works, looking to the amelioration and benefit of the public health, manners, or morals, such private property or private rights of property must be entitled to the protection given by the constitution of the United States declaring, "nor shall private property be taken for public use without just compensation," (see U. S. Const. Fifth Amend.,) and by articles 155 and 156 of the constitution of Louisiana, declaring—

Art. 155. "No *ex post facto* law, nor any law impairing the obligation of contracts, shall be passed, *nor vested rights be divested, unless for purposes of public utility, and for adequate compensation previously made.*"

Art. 156. "Private property shall not be taken nor damaged for public purposes without just and adequate compensation being first paid."

All property of corporations or individuals is owned subject to the proper exercise of the police power. If my lot of ground is needed for a public hospital or jail, no doubt I am entitled to compensation before it can be taken from me. If my vested rights are needed to supply the city of New Orleans with pure water, must I not likewise be compensated?

The arguments usually addressed to the courts in cases like the one under consideration are generally based on the assumption that the sovereign, in exercising the police power of the state, is absolutely unfettered with regard to all the rights of individuals and all the rights of property. I am not prepared to take this advanced ground, and therefore, having jurisdiction, I feel compelled to enjoin the St. Tammany Water-works Company from further proceedings necessarily resulting in the confiscation or appropriation without compensation of the vested rights of the New Orleans Water-works Company.

So far as the city of New Orleans is concerned, although the city attorney has entered an appearance for her, no steps have been taken in her behalf as against complainant, and a decree *pro confesso* has been entered. Although from the showing made by complainant it

would seem probable that some members of the city council are disposed to act with the St. Tammany Water-works Company in depreciating the stock and bonds of complainant, and in hindering the performance of the works and duties devolving on complainant, yet it hardly seems probable that such adverse action can be secured from the city government. Considering the very large interest the city owns directly in the stock and property of the New Orleans Water-works Company, and particularly in view of the fact that as the city of New Orleans is the vendor and warrantor of the property, rights, and privileges she transferred to the water-works company, and was and is the chief beneficiary in the financial schemes provided by the legislature by which she was relieved of an oppressive bonded debt, any successful adverse action on her part would subject her, in equity and good conscience, to the payment of every dollar of the original "water-works bonded debt," and perhaps also to the payment of all the bonds and paid stock of the water-works company.

It would thus seem that in this controversy both individual interest and good faith would control the city's action. At all events, the restraint by injunction of the legislative action of a corporation is of doubtful propriety, and I am indisposed to grant such order; particularly so when complainant will lose no substantial advantage thereby, as an injunction can readily issue as soon as legislation takes any form susceptible of execution. That any rights of the defendant the St. Tammany Water-works Company may be saved, the complainant will give adequate security.

Let an injunction issue as prayed for against the St. Tammany Water-works Company, on complainant's giving bond in the sum of $20,000, with good and solvent security, conditioned to repay all damages resulting to the defendants from the issuance of said injunction, should it be hereafter determined in this court, or on appeal, that said injunction was wrongfully or improvidently issued.

---

JURISDICTION OF CIRCUIT COURT. For the judicial power to extend to a violation of the constitution, it must be a case in law or in equity.(*a*) It is the final arbiter of constitutional construction, and may receive from the legislature the power to construe every constitutional law.(*b*) The act must be clearly subversive of the constitution,(*c*)—a clear violation,(*d*)—and the objec-

(*a*) Cohens v. Virginia, 6 Wheat 264. See Railroad Co. v. Mississippi, 102 U. S. 135.

(*b*) Van Horne v. Dorrance, 2 Dall. 304; Martin v. Hunter, 1 Wheat. 304; Cohens v. Virginia, 6

Wheat. 264; Ableman v. Booth, 21 How. 506; S. C. 3 Wis. 1; Mayor v. Cooper, 6 Wall. 247.

(*c*) Turner v. Athans, 6 Neb. 54.

(*d*) Central C. R. Co. v. Twenty-third St. R. Co. 54 How. Pr. 168; Bennington v. Park, 50 Vt. 178.

tion must not be doubtful.(e)   It extends over statutes, whether passed by a state legislature or by congress, which are claimed to be in contravention of the constitution of the United States.(f)   So the circuit court has jurisdiction of a suit arising under a state law violating the obligations of a contract;(g) but not to statutes claimed to be void under a state constitution.(h)

VESTED RIGHTS.   A right is vested when it has already become a title, legal or equitable,(i) and the legislature has no power to divest titles(j) or legal or equitable rights previously vested,(k) nor to vest them in another.(l) Even if rights have grown up under a law of somewhat ambiguous meaning, the legislature cannot interfere with them;(m) but a statute is not objectionable because it purports to operate on prior, contingent, or qualified rights.(n)   So, if an act of the legislature is within the legislative power, it is not a valid objection to it that it divests vested rights.   Such an act is not within the constitutional prohibition, however repugnant it may be to the principles of sound legislation.(o)   If a right be impaired by a subsequent statute, the law is void;(p) but the repeal of a statute before a party has taken all the steps necessary to give him a right under it, does not impair the right.(q)   A corporation may be private, and yet the charter may contain provisions of a purely public character.(r)   An act which impairs the charter by enlarging the powers of the state over the body corporate, or by abridging the franchise, or by altering the charter, is void.(s)   The legislature may make a failure to comply with police regulations a ground for forfeiture of a charter,(t) and the provisions of its charter cannot exempt it or its officers from regulations made in the exercise of police powers of a state;(u) but it cannot subject a corporation to forfeiture of its franchise for any cause not sufficient when such corporation was created.(v)

POLICE POWERS OF STATE.   The police powers comprehend all those general laws of internal regulation necessary to secure peace, good order, health, and the comfort of society.(w)   It extends to the protection of the lives, limbs, health, comfort, morals, and quiet of all persons, and the protection of all property in the state.(x)   Congress cannot legislate on the internal police of a state;(y) the power of the state over police regulations being supreme.(z)

---

(e) U. S. v. Jackson, 3 Sawy. 62; People v. Brinkerhoff, 68 N. Y. 259.

(f) Calder v. Bull, 3 Dall. 399; Marbury v. Madison, 1 Cranch, 137; Dartmouth Coll. v. Woodward, 4 Wheat. 625.

(g) State Lottery Co. v. Fitzpatrick, 3 Wood, 222.

(h) Calder v. Bull, 3 Dall. 399.

(i) Richardson v. Aiken, 87 Ill. 138.

(j) Helm v. Webster, 85 Ill. 116.

(k) Bunn v. Morrison, 5 Ark. 217; Grissom v. Hill, 17 Ark. 489.

(l) Koenig v. Omaha, etc., R. Co. 3 Neb. 383.

(m) McLeod v. Burroughs, 9 Ga. 213.

(n) Clarke v. McCreary, 40 Miss. 347.

(o) Lane v. Nelson, 79 Pa. St. 407.

(p) Bronson v. Kinzie, 1 How. 311; McCracken v. Hayward, 2 How. 608; Von Hoffman v. Quincy, 4 Wall. 535.

(q) Van Horne v. Dorrance, 2 Dall. 304; Mobile R. Co. v. State, 29 Ala. 573; Brinsfield v. Carter,

2 Ga. 143; Wise v. Rogers, 24 Gratt. 169; Huntsman v. Randolph, 5 Hayw. 263; State v. Gray, 4 Wis. 330.

(r) Regents v. Williams, 9 Gill. & J. 365.

(s) Philadelphia, etc., R. Co. v. Bowers, 4 Houst. 506; Commercial Bank v. State, 14 Miss. 439.

(t) State v. S. P. R. Co. 24 Tex. 80.

(u) Cummings v. Spannhorst, 5 Mo. Ct. Ap. 21

(v) State v. Tombeckbee Bank, 2 Stew. 30.

(w) Ex parte Shrader, 33 Cal. 279; Philadelphia, etc., R. Co. v. Bowers, 4 Houst. 506; Beer Co. v. Massachusetts, 97 U. S. 25.

(x) Munn v. Illinois, 94 U. S. 147; Toledo. etc., Co. v. Jacksonville, 67 Ill. 37; Ex parte Shrader, 33 Cal. 279; Davis v. Central R. Co. 17 Ga. 323.

(y) Gibbons v. Ogden, 9 Wheat. 203; U. S. v. De Witt, 9 Wall. 41; Slaughter-house Cases, 16 Wall. 36; Railroad Co. v. Fuller, 17 Wall. 560.

(z) Slaughter-house Cases, 16 Wall. 62; Bartemeyer v. Iowa, 18 Wall. 138.

Every citizen holds his property subservient to such police regulation as the legislature in its wisdom may enact for the general welfare,(*a*) and private interests must be made subservient to the general interest of the community.(*b*) When applied to corporations the police power is subject to constitutional limitations, and it cannot conflict with a charter;(*c*) but provisions for penalties and forfeitures in a charter are not mere matters of contract.(*d*) It is the province of the legislature to determine the exigency calling for the exercise of police powers, and of the courts to decide the proper subjects of its exercise,(*e*) and it cannot, by any contract, divest itself of this power,(*f*) nor of its discretion in its exercise.(*g*)—[ED.

(*a*) Brown v. Keener, 74 N. C. 714; Pool v. Trexler, 76 N. C. 297.

(*b*) Slaughter-house Cases, 16 Wall. 62; Com. v. Alger, 7 Cush. 84; Taunton v. Taylor, 116 Mass. 254; Watertown v. Mayo, 109 Mass. 315.

(*c*) Lake View v. Rose Hill Cemetery, 70 Ill. 191; State v. Fosdick, 21 La. Ann. 256.

(*d*) State v. Railroad Co. 3 How. 534; 12 Gill. & J. 399.

(*e*) Lake View v. Rose Hill Cemetery, 70 Ill 191; Daniels v. Hilgard, 77 Ill. 640.

(*f*) Beer Co. v. Massachusetts, 97 U. S. 25.

(*g*) Boyd v. Alabama, 94 U. S. 645; Beer Co. v. Massachusetts, 97 U. S. 25.