## BEER COMPANY *v.* MASSACHUSETTS.

1. An act of the legislature of Massachusetts, passed Feb. 1, 1828, to incorporate the Boston Beer Company, "for the purpose of manufacturing malt liquors in all their varieties," declared that the company should have all the powers and privileges, and be subject to all the duties and requirements, contained in an act passed March 3, 1809, entitled "An Act defining the general powers and duties of manufacturing corporations," and the several acts in addition thereto. Said act of 1809 had this clause: "*Provided always*, that the legislature may from time to time, upon due notice to any corporation, make further provisions and regulations for the management of the business of the corporation and for the government thereof, or wholly to repeal any act or part thereof, establishing any corporation, as shall be deemed expedient." In 1829, an act repealing that of 1809, and all acts in addition thereto, and reserving similar power, was passed. Under the prohibitory liquor law of 1869, certain malt liquors belonging to the company were seized as it was transporting them to its place of business in said State, with intent there to sell them, and they were declared forfeited. *Held*, 1. That the provisions of the act of 1809, touching the power reserved by the legislature, having been adopted in the charter, were a part of the contract between the State and the company, rendering the latter subject to the exercise of that power. 2. That the contract so contained in the charter was not affected by the repeal of that act, nor was its obligation impaired by the prohibitory liquor law of 1869.

2. The company, under its charter, has no greater right to manufacture or sell malt liquors than individuals possess, nor is it exempt from any legislative control therein to which they are subject.

3. All rights are held subject to the police power of a State; and, if the public safety or the public morals require the discontinuance of any manufacture or traffic, the legislature may provide for its discontinuance, notwithstanding individuals or corporations may thereby suffer inconvenience.

4. As the police power of a State extends to the protection of the lives, health, and property of her citizens, the maintenance of good order, and the preservation of the public morals, the legislature cannot, by any contract, devest itself of the power to provide for these objects.

5. While the court does not assert that property actually in existence, and in which the right of the owner has become vested when a law was passed, may, under its provisions, be taken for the public good without due compensation, nor lay down any rule at variance with its decisions in regard to the paramount authority of the Constitution and laws of the United States, relating to the regulation of commerce with foreign nations and among the several States, or otherwise, it reaffirms its decision in *Bartemeyer* v. *Iowa* (18 Wall. 129), that, as a measure of police regulation, a State law prohibiting the manufacture and sale of intoxicating liquors is not repugnant to any clause of that Constitution.

6. It appearing from the record that the point, that the prohibitory liquor law of 1869 impaired the obligation of the contract contained in the charter of the company, was made on the trial of the case, and decided adversely to the company, and was afterwards carried, by bill of exceptions, to the Supreme Court of Massachusetts, where the rulings of the lower court were affirmed, this court has jurisdiction.

ERROR to the Superior Court of the Commonwealth of Massachusetts.

This was a proceeding in the Superior Court of Suffolk County, Massachusetts, for the forfeiture of certain malt liquors, belonging to the Boston Beer Company, and which had been seized as it was transporting them to its place of business in said county; with intent there to sell them in violation of an act of the legislature of Massachusetts, passed June 19, 1869, c. 415, commonly known as the Prohibitory Liquor Law. The company claimed that, under its charter, granted in 1828, it had the right to manufacture and sell said liquors; and that said law impaired the obligation of the contract contained in that charter, and was void, so far as the liquors in question were concerned. The court refused to charge the jury to that effect, and a verdict was found against the claimant. The rulings of the Superior Court having been affirmed by the Supreme Judicial Court of the Commonwealth, the company brought the case here. The statutes of Massachusetts bearing on the case are referred to in the opinion of the court.

*Mr. H. W. Paine* and *Mr. F. O. Prince* for the plaintiff in error.

Although the franchise of the company, when granted, was subject to the provisions of the act of 1809, and might, while they continued in force, have been modified or revoked, after due notice, the legislature, by repealing that act, relinquished the power thereby reserved, and rendered the grant absolute and unqualified.

The franchise was that of "manufacturing malt liquors in all their varieties in the city of Boston." The power to sell, although not expressly given, was clearly implied, as otherwise the charter would have been utterly worthless. Co. Litt. 56; Shep. Touch. 49; *Thayer* v. *Payne*, 2 Cush. (Mass.) 327;

*Pomfret* v. *Ricroft,* 1 Saund. 321; *Darcy* v. *Askwith,* Hob. 234; *Planters' Bank* v. *Grant,* 6 How. 318; *United States* v. *Babbitt,* 1 Black, 55; *Huidekooper's Lessee* v. *Douglass,* 3 Cranch, 1; *Charles River Bridge* v. *Warren Bridge et al.,* 11 Pet. 420; *People* v. *Platt,* 17 Johns. (N. Y.) 215.

The Commonwealth having made a contract with the company, that its chartered rights and immunities should not be revoked, or its franchise essentially impaired, subsequent legislation cannot, directly or indirectly, impair the obligation of that contract, and destroy vested rights under it. Cooley, Const. Lim. 278, and cases cited; *Terrett* v. *Taylor,* 9 Cranch, 43; *Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. 518; *The Binghampton Bridge,* 3 Wall. 51; *Wales* v. *Sutton,* 2 Mass. 143; *Boston & Lowell Railroad* v. *Salem & Lowell Railroad,* 2 Gray (Mass.), 1; *Piscataqua Bridge* v. *New Hampshire Bridge,* 7 N. H. 35; *Thorpe* v. *Burlington & Rutland Railroad,* 27 Vt. 140; *Farrington* v. *Tennessee,* 95 U. S. 679.

If the police power of a State, as defined in *Commonwealth* v. *Alger* (7 Cush. (Mass.) 53), be " the power vested in the legislature by the Constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the Commonwealth and the subjects of the same," the taxing power is clearly of that character. If the legislature may, as the adjudged cases affirm, grant an immunity from taxation, and thus part with that power, why may it not with any other? It cannot, in the pretended exercise of the police power, violate, without a breach of the Constitution, the provisions of an existing charter, nor, under the guise of regulating, take from a corporation any of its essential chartered rights and privileges. Cooley, Const. Lim. 576, and cases cited.

The company does not invoke the aid of the Fourteenth Amendment to the Constitution, but submits that the statute of 1869, under which the liquor was seized and condemned, impairs the obligation of the contract contained in its charter, and is therefore unconstitutional and void. The court below having expressly decided otherwise, there can be no doubt as to the jurisdiction of this court.

*Mr. Charles R. Train* for the defendant in error.

The case was tried on the general issue, and the record does not present any matter of law. The opinion of the court below showing that a Federal question was considered is not decisive that it was actually raised or necessarily involved. *Moore* v. *Mississippi*, 21 Wall. 636.

The act of 1869 does not impair the obligation of a contract, inasmuch as the charter of the company, being subject to the reservation of the act of 1869, is amendable and repealable. The State may, therefore, in the exercise of her police power, subject the company to the same restraints in the use of its property as may be imposed upon natural persons. *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Peik* v. *Chicago & North-Western Railway Co.*, 94 U. S. 164.

Conceding that the charter is not repealable, it is not fairly susceptible of the interpretation that it confers the absolute right to manufacture malt liquor, free from all legislative control. *Ohio Life Insurance & Trust Co.* v. *Debolt*, 16 How. 416; *Providence Bank* v. *Billings*, 4 Pet. 514; *West Wisconsin Railway Co.* v. *Board of Supervisors of Trempealeau County*, 93 U. S. 595; *Farrington* v. *Tennessee*, 95 id. 679; *Thorpe* v. *Rutland & Burlington Railroad*, 27 Vt. 142; *Commonwealth* v. *Hamilton Manufacturing Co.*, 120 Mass. 383.

The legislature could not, under the State Constitution, make a binding contract, that the police power should not be thereafter exercised so as to limit this company in the matter of manufacturing malt liquors. *Commonwealth* v. *Bird*, 12 Mass. 443; *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray (Mass.), 1; *Eastern Railroad* v. *Maine Railroad*, 111 Mass. 125.

The distinction between the power of the legislature in regard to the law-making and other sovereign powers on the one hand, and in regard to the property of the public on the other, is a sound one. *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, *supra*; *Piscataqua Bridge* v. *New Hampshire Bridge*, 7 N. H. 35; *Brewster* v. *Hough*, 10 id. 138; *Brick Presbyterian Church* v. *New York*, 5 Cow. (N. Y.) 538; *The Binghampton Bridge*, 3 Wall. 51; *State* v. *Noyes*, 47 Me. 189.

The abstract proposition that a person has not the constitu-

tional right to apply, in violation of a statute, his property to those uses which are injurious to the common welfare, though not forbidden by the common law, is, as matter of authority, established law. *Fisher* v. *McGirr*, 1 Gray (Mass.), 1; *Blair* v. *Forehand*, 100 Mass. 136; *Lowell* v. *Boston*, 111 id. 454; *Oviatt* v. *Pond*, 29 Conn. 479; *State* v. *Keeran*, 5 R. I. 497; *State* v. *Allmond*, 2 Houst. (Del.) 612; *Commonwealth* v. *Alger*, 7 Cush. (Mass.) 53; *Coates* v. *New York*, 7 Cow. (N. Y.) 585; *State* v. *Noyes*, 30 N. H. 279; *People* v. *Hawley*, 3 Mich. 330; *Commonwealth* v. *Tewksbury*, 11 Metc. (Mass.) 55; *New Orleans* v. *Stafford*, 27 La. Ann. 417; *State* v. *Noyes*, 47 Me. 189; *Commonwealth* v. *Blackington*, 24 Pick. (Mass.) 352; *The License Cases*, 5 How. 504; *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Munn* v. *Illinois*, 94 U. S. 113.

It is clear, therefore, that the act of 1869 neither violates any provision of the Constitution of the United States, nor impairs any vested rights of the company.

The following cases hold that a prohibitory law, to the same effect as that here in question, does not interfere with the vested rights of a person who owned intoxicating liquors at the time of its enactment: *State* v. *Allmond*, 2 Houst. (Del.) 612; *State* v. *Paul*, 5 R. I. 185; *State* v. *Keeran*, id. 498; *Lincoln* v. *Smith*, 27 Vt. 328; *Gill* v. *Parker*, 31 id. 610; *State* v. *Court of Common Pleas, &c.*, 7 Vroom (N. J.), 72; *Fisher* v. *McGirr*, 1 Gray (Mass.), 1; *Commonwealth* v. *Huber*, 12 id. 29; *Commonwealth* v. *Logan*, id. 136; *People* v. *Hawley*, 3 Mich. 330; *People* v. *Gallagher*, 4 id. 244; *Our House No. 2* v. *State*, 4 Green, 172; *Sauto* v. *State*, 2 Iowa, 165; *State* v. *Bartemeyer*, 31 id. 601; *State* v. *Wheeler*, 25 Conn. 290.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The question raised in this case is, whether the charter of the plaintiff, which was granted in 1828, contains any contract the obligation of which was impaired by the prohibitory liquor law of Massachusetts, passed in 1869, as applied to the liquor in question in this suit.

Some question is made by the defendant in error whether the point was properly raised in the State courts, so as to be

the subject of decision by the highest court of the State.  It is contended that, although it was raised by plea, in the municipal court, yet, that plea being demurred to, and the demurrer being sustained, the defence was abandoned, and the only issue on which the parties went to trial was the general denial of the truth of the complaint.  But whatever may be the correct course of proceeding in the practice of courts of Massachusetts, — a matter which it is not our province to investigate, — it is apparent from the record that the very point now sought to be argued was made on the trial of the cause in the Superior Court, and was passed upon, and made decisive of the controversy, and was afterwards carried by bill of exceptions to the Supreme Judicial Court, and was decided there adverse to the plaintiff in error on the very ground on which it seeks a reversal.

The Supreme Court, in its rescript, expressly decides as follows : —

" Exceptions overruled for the reasons following : —

" The act of 1869, c. 415, does not impair the obligations of the contract contained in the charter of the claimant, so far as it relates to the sale of malt liquors, but is binding on the claimant to the same extent as on individuals.

" The act is in the nature of a police regulation in regard to the sale of a certain article of property, and is applicable to the sale of such property by individuals and corporations, even where the charter of the corporation cannot be altered or repealed by the legislature."

The judgment of the Superior Criminal Court was entered in conformity to this rescript, declaring the liquors forfeited to the Commonwealth, and that a warrant issue for the disposal of the same.

This is sufficient for our jurisdiction, and we are bound to consider the question which is thus raised.

As before stated, the charter of the plaintiff in error was granted in 1828, by an act of the legislature passed on the 1st of February in that year, entitled " An Act to incorporate the Boston Beer Company."  This act consisted of two sections. By the first, it was enacted that certain persons (named), their successors and assigns, " be, and they hereby are, made a corporation, by the name of The Boston Beer Company, for the

purpose of manufacturing malt liquors in all their varieties, in the city of Boston, and for that purpose shall have all the powers and privileges, and be subject to all the duties and requirements, contained in an act passed on the third day of March, A.D. 1809, entitled 'An Act defining the general powers and duties of manufacturing corporations,' and the several acts in addition thereto." The second section gave the company power to hold such real and personal property to certain amounts, as might be found necessary and convenient for carrying on the manufacture of malt liquors in the city of Boston.

The general manufacturing act of 1809, referred to in the charter, had this clause, as a proviso of the seventh section thereof: "*Provided always*, that the legislature may from time to time, upon due notice to any corporation, make further provisions and regulations for the management of the business of the corporation and for the government thereof, or wholly to repeal any act or part thereof, establishing any corporation, as shall be deemed expedient."

A substitute for this act was passed in 1829, which repealed the act of 1809 and all acts in addition thereto, with this qualification: "But this repeal shall not affect the existing rights of any person, or the existing or future liabilities of any corporation, or any members of any corporation now established, until such corporation shall have adopted this act, and complied with the provisions herein contained."

It thus appears that the charter of the company, by adopting the provisions of the act of 1809, became subject to a reserved power of the legislature to make further provisions and regulations for the management of the business of the corporation and for the government thereof, or wholly to repeal the act, or any part thereof, establishing the corporation. This reservation of the power was a part of the contract.

But it is contended by the company that the repeal of the act of 1809 by the act of 1829 was a revocation or surrender of this reserved power.

We cannot so regard it. The charter of the company adopted the provisions of the act of 1809, as a portion of itself; and those provisions remained a part of the charter, notwith-

standing the subsequent repeal of the act. The act of 1829 reserved a similar power to amend or repeal that act, at the pleasure of the legislature, and declared that all corporations established under it should cease and expire at the same time when the act should be repealed. It can hardly be supposed that the legislature, when it reserved such plenary powers over the corporations to be organized under the new act, intended to relinquish all its powers over the corporations organized under or subject to the provisions of the former act. The qualification of the repeal of the act of 1809, before referred to, seems to be intended not only to continue the existence of the corporations subject to it in the enjoyment of all their privileges, but subject to all their liabilities, of which the reserved legislative control was one.

If this view is correct, the legislature of Massachusetts had reserved complete power to pass any law it saw fit, which might affect the powers of the plaintiff in error.

But there is another question in the case, which, as it seems to us, is equally decisive.

The plaintiff in error was incorporated "for the purpose of manufacturing malt liquors in all their varieties," it is true; and the right to manufacture, undoubtedly, as the plaintiff's counsel contends, included the incidental right to dispose of the liquors manufactured. But although this right or capacity was thus granted in the most unqualified form, it cannot be construed as conferring any greater or more sacred right than any citizen had to manufacture malt liquor; nor as exempting the corporation from any control therein to which a citizen would be subject, if the interests of the community should require it. If the public safety or the public morals require the discontinuance of any manufacture or traffic, the hand of the legislature cannot be stayed from providing for its discontinuance, by any incidental inconvenience which individuals or corporations may suffer. All rights are held subject to the police power of the State.

We do not mean to say that property actually in existence, and in which the right of the owner has become vested, may be taken for the public good without due compensation. But we infer that the liquor in this case, as in the case of *Barte-*

*meyer* v. *Iowa* (18 Wall. 129), was not in existence when the liquor law of Massachusetts was passed. Had the plaintiff in error relied on the existence of the property prior to the law, it behooved it to show that fact. But no such fact is shown, and no such point is taken. The plaintiff in error boldly takes the ground that, being a corporation, it has a right, by contract, to manufacture and sell beer for ever, notwithstanding and in spite of any exigencies which may occur in the morals or the health of the community, requiring such manufacture to cease. We do not so understand the rights of the plaintiff. The legislature had no power to confer any such rights.

Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals. The legislature cannot, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim, *salus populi suprema lex;* and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion can no more be bargained away than the power itself. *Boyd* v. *Alabama*, 94 U. S. 645.

Since we have already held, in the case of *Bartemeyer* v. *Iowa*, that as a measure of police regulation, looking to the preservation of public morals, a State law prohibiting the manufacture and sale of intoxicating liquors is not repugnant to any clause of the Constitution of the United States, we see nothing in the present case that can afford any sufficient ground for disturbing the decision of the Supreme Court of Massachusetts.

Of course, we do not mean to lay down any rule at variance with what this court has decided with regard to the paramount authority of the Constitution and laws of the United States, relating to the regulation of commerce with foreign nations and among the several States, or otherwise. *Brown* v. *Maryland*, 12 Wheat. 419; *License Cases*, 5 How. 504; *Passenger*

*Cases,* 7 id. 283; *Henderson* v. *Mayor of New York,* 92 U. S. 259; *Chy Lung* v. *Freeman,* id. 275; *Railroad Company* v. *Husen,* 95 id. 465. That question does not arise in this case.

*Judgment affirmed.*