## No. 60.

### W. P. CONVERSE JR. & CO. *v.* CITY OF NEW ORLEANS.

The police power of a City extends to all matters affecting the public, public morals and the protection of property, so that where the City enforces an ordinance regulating the place and manner of storing combustibles, petroleum, etc., no individual or company affected thereby can successfully resist such reasonable regulation.

The police power cannot be contracted away.

*Appealed from Sixth District Court, Parish of Orleans.*

*Singleton & Browne,* attorneys for plaintiff, appellant.

*E. H. McCaleb, E. H. Farrar,* attorneys for defendant, appellee.

In this case both the judges of this court recused themselves, Judge Rogers having been the judge of the lower court from which the case was appealed, and Judge McGloin having been of counsel in the case. His Honor Judge Lazarus of the District Court acting as judge *ad hoc,* delivered the opinion of the court in the words and figures following, to wit;

On the 22nd of April 1879, the City Council adopted an ordinance to take immediate effect regulating the storage of petroleum and other inflammable oils within the city limits. The ordinance prohibits the storage of petroleum, coal oil, naphtha, benzine or other inflammable oils in quantities exceeding 50 gallons in any one building within the corporate limits of the city, outside of the locality particularly designated by the ordinance where larger quantities of the class of oils mentioned are to be stored.

The district determined by the ordinance for the storage of petroleum, coal oil, naphtha, benzine and other inflammable oils of like nature in quantities exceeding fifty gallons, is bounded by Melpomene, Galvez, Claiborne Streets and Napoleon Avenue. There are other provisions in the ordinance of an executory character unnecessary to notice.

The city passed the ordinance under the powers conferred by its charter. Section 12 of the City Charter provides "that

the Council shall have full power and authority to make and pass such by-laws and ordinances as are necessary and proper . . .", sub-section 7 "to prevent gun powder, petroleum and all explosive material from being stored within the city and suburbs, in such quantities as to endanger the public safety, and to regulate the manner and quantity of storage of the same . . . . . ." City Charter Acts of 1870. Ex. Sess. p. 30.

W. P. Converse Company enjoined the execution of the above ordinance in so far as it affected them. Their petition is lengthy and argumentative; it is only necessary to exhibit the substantive part of their complaint to understand the issue presented.

Plaintiffs aver in their petition that as dealers in petroleum in quanties sufficiently large to meet the requirements of their business, they selected a building for the storage of oil situated in the square bounded by St. Joseph, Front, Water and Julia Streets, which building they aver to be, "sufficiently distant from all other structures and all other combustible materials to be entirely safe should a fire occur in any other portion of the city." "That they have occupied the building as a warehouse and stored oils therein from October 1873; and their lease on said building would not expire until October 1879. That in utilizing said building they have provided large stationary iron tanks for the purpose of containing said oils and they have otherwise expended considerable sums of money for the safe storage and keeping of oil." Petitioners aver "that they have been storing to the knowledge and with the implied consent of the city authorities for some years; that the acquiescence of the city authorities to the storage in said premises for so many years, and that too without accident, injury or damage to any one in person, property or otherwise is equivalent to an express authorization granted by the city authorities, to store their oils in said warehouse and your petitioners cannot now be legally deprived of that vested right." The petition avers that the city authorities charged with the execution of the ordinance have initiated proceedings, compelling petitioners to abandon the premises occupied by them as an

oil warehouse and to remove their oils within the limits and to the locality designated in the ordinance; and that a writ of injunction is necessary to protect their rights in the premises and shield them from the loss and damage consequent upon the enforcement of the ordinance against them.

The prayer is for an injunction against the city restraining its executive officers from executing and enforcing the provisions of ordinance 5024, A. S. against petitioners in so far as their warehouse is concerned and that the injunction be made perpetual.

To the petition of plaintiff is annexed a certified copy of the ordinance, the operation of which is sought to be enjoined. A preliminary injunction issued and the city moved to dissolve the same on the face of the papers.　The Court *a quo* made the rule absolute and dissolved the injunction, the dissolution to take effect on October 1, 1879.　From the judgment dissolving the injunction, plaintiff appealed.　The argument of appellant for a reversal of the judgment is one of hardship and inconvenience, not of law.　That the passage of the ordinance complained of was within the power conferred on the city by its charter, cannot be questioned.　That the power and authority thus delegated and exercised by the city was clearly within its police power, cannot be denied, or even doubted.　Dill on Mun. Corps. Vol. 1 Sec. 93, 95, 329 *et seq.*, Vol. 2, 596—Note 337.　Cooley Const. Limit, p. 748; Beer Co. vs. Mass. 97 U. S. 28; Fertilizing Co. vs. Hyde Park, 97 U. S. 66; Foote vs. Fire Dept., 5 Hill (N. Y.) 99.　In the absence of an express grant of power and under a general welfare claim, in a charter empowering the City Council, to pass such ordinances as appear necessary for the security of the city, the city authorities would have the undoubted right to regulate the mode of keeping and sale within the city limits of all combustible matter, such as gunpowder, oil, etc.　Dill on Mun. Corps. Sec. 337.　Geo. Report 509-561.　Cooley Const. Limit. p. 748.　And notes in Kennedy vs. Phelps, the Supreme Court of this state adopted the language used by the Supreme Court of Massachusetts, "It has not been denied, it cannot be, that

the mayor and aldermen are clothed with legislative powers and prerogatives to a certain extent and that they are fully empowered to adopt measures of police for the purpose of preserving the health and promoting the comfort and convenience and general welfare of the inhabitants within the city . . ." 10 Ann. 229.

The police power thus generally recognized as essential to municipal governments, has been expressly conceded to the City of New Orleans, by its charter, and it was clearly within the power thus granted that it adopted the ordinance regulating the storage of inflammable oils. Cooley Const. Limit. 713-748; 9 Wall. 41; U. S. vs. Derrett, 11 Bush. 311; Corn vs. Pattison, 7 Otto. 659-11 Otto 814.

Many attempts have been made to define the police power, but never with entire success. It is always easier to determine whether a particular case comes within the general scope of the power, than to give an abstract definition of the power itself which will be in all respects accurate. No one denies, however, that it extends to all matters affecting the public health, the public morals, and the protection of property. This power rests upon the wise and just maxim *Sic entere tuo eit alienum non laidas,* which being of universal application, it must of course be, within the range of legislative action to define the mode and prescribe the manner in which every one may so use his own as not to injure others. As to whether the ordinance complained of was necessary or proper is a matter purely and simply of legislative action of which the city authorities are the sole judges; and the judiciary have no power to control them in the exercise of their judgment in a matter confided to their discretion, by the law itself and peculiarly so from the very nature of things.

The right of the city to pass police regulations and enforce its police powers and privileges is incompatible with the right of a citizen who may be affected by the legitimate exercise of the power to suspend or defeat the operation of the law. As was said by the Supreme Court in Chatard vs. New Orleans, 10 Ann. Rep. 752; "We think it would be appropriate and

proper practice, in cases affecting the public health or convenience, or the enforcement of police regulations generally, that applicants for writs of injunctions should be required before the writ is granted, to establish contradictorily, at least a *prima facia* case necessary for the production of the writ." It *is* far better that one should suffer an inconvenience, than that the public safety should be imperilled and the public's property jeopardized or exposed to danger. *Salus populi suprema est lex,* Dill on Mun. Corps. Vol. 1, Sec. 93. The pretension of plaintiff that the city's knowledge and its implied consent to the selection and particular location of petitioner's warehouse for the storage of oil is barely worthy of consideration. In the first place the city only saw proper to regulate the storage of inflammable oils in April 1879, when the ordinance complained of was adopted, and this regulation as shown by plaintiff's petition was made after they had occupied the premises as an oil warehouse for nearly six years. But if the permission from the city to occupy and use the building for storing oil had been expressed, the police power could not be contracted away, and the city at any time in the interest of the public health or safety could withdraw her consent and resume at will the exercise of her police power. Beer Co. vs. Mass., 97 U. S. 25; *Stone vs. Miss.,* 101 U. S. 80; *Husen vs. R. R.* 95 U. S., Cooley Const. Limit. 723.

The appellant had no reason or cause to complain of the judgment of the lower court, which accorded them more than they were entitled to, the injunction was dissolved to take effect at the expiration of their lease October 1, 1879.

The injunction should have been dissolved unconditionally, but as the time has passed when the decree was to become operative we shall affirm the judgment and it is so ordered.

Honorable W. T. Houston, judge of the Civil District Court, acting as judge *ad hoc,* concurred in the foregoing opinion.