### SUFFICIENCY OF THE LIQUOR LICENSING ACT.

Common Pleas Court of Lucas County.

JOSEPH MEYER v. JOHN A. O'DWYER AND CHARLES H. NAUTS, AS THE LUCAS COUNTY LIQUOR LICENSING BOARD.[*]

Decided, December, 1913.

*Constitutional Law—Policy of the State With Reference to the Liquor Traffic—Not Changed by. Recent Constitutional Amendment— .Validity of the Liquor Licensing Law—103 O. L., 216.*

1. The amendment of 1912 to the state Constitution, providing for licensing of the traffic in intoxicating liquors, does not change the policy of the state from that which obtained under the Constitution of 1851 by placing the said traffic upon the same basis as other lines of business; but on the contrary further burdens and restrictions are imposed upon the said traffic by this amendment and the number of persons who may be engaged therein is limited.

2. The prohibition by a state in a. proper exercise of its police power of any business, calling or occupation which affects injuriously the health, good morals, peace or safety of society, is not in conflict with the Fourteenth Amendment to the federal Constitution.

3. The provisions of the liquor license law (103 O. L., 216), requiring that applicants for licenses shall be of good moral character, permitting the granting of licenses to corporations, limiting the number of saloons to one for each five hundred inhabitants, and giving preference to those engaged in the traffic prior to May, 1912, are not in contravention with the state Constitution; nor is there a grant of legislative power in the provision which invests licensing boards with authority to pass upon the moral character of applicants for licenses to traffic in intoxicating liquors.

*Allen J. Seney, Pierce J. Phelan* and *Frank A. Boyer,* for plaintiff.

*P. E. Dempsey,* Assistant Attorney-General, *Kohn, Northup, Ritter & McMahon* and *Fell & Schaal,* contra.

MANTON, J.

This cause comes on to be heard on the petition, motion for injunction, and demurrer to the petition; and is heard and submitted on such pleadings and the argument of counsel.

---

[*] Motion by plaintiff for an injunction overruled by. the Supreme Court, January 13, 1914.

Plaintiff says that he brings this action on his own behalf as well as on behalf of a large number of other persons having a common and general interest in the matter involved in this action and in the relief sought.

The facts pleaded and admitted by the demurrer, and the law pleaded in the petition are as follows:

That plaintiff is a citizen of the United States and of the state of Ohio, and was such prior to the fourth Monday in May, 1912; that he was engaged in the business of selling intoxicating liquors prior to the fourth Monday in May, 1912, in Toledo, Lucas county, Ohio, and still is so engaged; that he is of good moral character; that the defendants are the duly appointed, qualified and acting county liquor licensing board for the county of Lucas, state of Ohio; that the people of the state of Ohio, on September 3d, 1912, adopted a Constitution and provided in and by Section 9 of Article XV thereof that license to traffic in intoxicating liquors shall be granted in this state, and license laws operative throughout the state shall be passed with such restrictions and regulations as may be provided by law; that on April 18th, 1913, the General Assembly of Ohio passed, in pursuance of the authority conferred by Section 9 of Article XV of the Constitution an act entitled, ''An act to provide for license to traffic in intoxicating liquors, and to further regulate the traffic thereof;'' that Section 9 of Article XV of the Constitution and Section 24 of the aforesaid act of the General Assembly provide that not more than one saloon shall be licensed in any township or municipality of less than five hundred of population nor more than one saloon for each five hundred of population in other towns and municipalities; that said act of the General Assembly provides that certain officials provided for therein shall have the power to designate the persons or associations of persons who shall be licensed and permitted to conduct said business, and that the defendants herein are the officials so provided for Lucas county; that said act of the General Assembly, by Section 48 thereof, provides that whoever sells intoxicating liquors without having been duly licensed as provided in said act shall be guilty of a crime and shall be subject to fine and imprisonment; that

Section 28 of said act provides that where the number of applicants for licenses exceeds the number of licenses allowed by law, preference shall be given to such applicants as are engaged in the sale of intoxicating liquors prior to the fourth Monday in May, 1912, or to their *bona fide* successors in title, provided they are otherwise qualified by law; that Lucas county has a population of about 181,909; that it is one of the counties of the state wherein it is lawful to traffic in intoxicating liquors; that on the first day of September, 1913, and for a long time prior thereto, there were in operation in said county 626 places where the business of trafficking in intoxicating liquors was conducted and that plaintiff conducted one of such places; that on or about the first day of September, 1913, plaintiff, and the others for whom he sues, filed with the defendants their applications for licenses to traffic in intoxicating liquors conformably to the said act, and said applications were received and filed by the defendants for their consideration; that plaintiff and the others for whom he sues paid to the defendants at the time of filing such applications the sum of five ($5) dollars; that on or about the seventh day of September, 1913, defendants made and published a list of the applicants for said licenses, giving the names and residence addresses of applications and the places where such applicants expected to do business, and said list included the names, addresses and places of business of plaintiff and the others for whom he sues; that plaintiff's place of business is located at No. 1007 West Central avenue in Toledo, Lucas county, Ohio, and he is not now, nor was he at the time of filing his said application, interested in any way in such business at any other place; that on or about the fifth day of November, 1913, defendants announced the names of applicants whom they proposed to license, and also the names of those whose applications were denied, and the name of plaintiff and the names of the others for whom he sues were among those whose applications had been denied; that defendants propose to license individuals and associations who are now conducting business at some 363 different localties in said county, and among the favored applicants are thirty-five or forty corporations incor-

porated under the laws of different states.  The application of
plaintiff and those for whom he sues were denied for various
wholly arbitrary and unauthorized reasons, the chief of which,
and that given in most instances, was that defendants had already
determined to license all that they were allowed to license under
the law; that plaintiff and those for whom he sues are ready, will-
ing and able to pay, and will pay—if under an order of the court
they are permitted to continue in business—all fees, taxes and
assessments which the law requires; that if denied the right to
continue in business they will suffer irreparable injury to their
property in the business and be subject to criminal prosecutions
unless they abandon their business and lose their property.

The relief prayed for in the petition is as follows:

That the defendants be enjoined from granting licenses to cor-
porations; be  enjoined from discriminating between those who
were engaged in business prior to the fourth Monday in May,
1912, and those who engaged in business after that date; be
enjoined from discriminating between applicants for licenses
by reason of any standard of moral character sought to be ar-
bitrarily established by them; be enjoined from denying licenses
to plaintiff and the others for whom he sues for the reason that
defendants have determined to grant licenses to others to the
number allowed by law; that defendants be required to license
all applicants who will conform to so much of said act of the
General Assembly as may be found by the court to be consistent
with the Constitution of the United States and the Constitution
of the state of Ohio, and for such further relief as is just and
equitable.

The conclusions of law pleaded in the petition, and which
form the basis of argument by counsel for plaintiff, are that the
constitutional provisions and the legislative act referred to in
limiting the right or privilege to traffic in intoxicating liquors
to one in five hundred of the population is in conflict with the
Fourteenth Amendment of the Constitution of the United States;
that the Legislature in providing for license to corporations
have violated that part of Section 9 of Article XV of the Ohio
Constitution of 1912 which provides: "License to traffic in in-

toxicating liquors shall not be granted to any person who, at the time of making application therefor, is not a citizen of the United States and of good moral character,'' that that part of Section 28 of the aforesaid act of the General Assembly giving to county licensing boards the power to give preference to applicants en-. gaged in the business prior to the fourth Monday in May, 1912, violates Sections 1 and 2 of Article I of the Bill of Rights of the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States; that said act of the General Assembly in Sections 19 and 21 violates Section 1 of Article II of the Ohio Constitution.

The motion filed herein prays for an injunction on the grounds set out in the petition. The demurrer sets up three several grounds:

1st.   That the plaintiff has not legal capacity to sue.

2d.   That the court has no jurisdiction of the subject of the action.

3d.   That the petition does not state facts which show a cause of action.

The demurrer was argued and submitted upon the third ground.

The petition in this case was filed November 7th, 1913; the motion for injunction November 10th, 1913; the demurrer to the petition November 13th, 1913. The cause was argued and submitted on the demurrer November 14th, 1913.

Counsel for plaintiff in argument contend that as the Constitution of 1912 provides that the traffic in intoxicating liquors shall be licensed and contains no mention of the evils arising from the traffic, that the policy of the state has been changed from that which obtained under the Constitution of 1851, and that the business of trafficking in intoxicating liquors is now no different from any other business, occupation or calling which it is necessary to regulate for the public good by license. They contend that the police power of the state which, under the Constitution of 1851, was unlimited and unrestricted in its dealings with the liquor question is now shorn and limited and brought within the constitutional restrictions and limitations that would

apply to such callings or occupations as the practice of medicine or dentistry, and that, therefore, any person in the state, if of good moral character, who complies with other requirements of the law, is entitled to a license. In other words, their claim is that there can be no constitutional or statutory limitations as to the number who may engage in the business.

No doubt that under the Constitution of 1802, any person might engage in the traffic of intoxicating liquors in Ohio until the passage of the act of 1831 (2 Swan & C., 1426) granting license to traffic in intoxicating liquors and regulating taverns, but after that date none but a licensee could engage in the traffic, so that the adoption of the license system is a limitation and a restraint upon the traffic. In the absence of a regulating act (a license system), the traffic is unrestrained, and that has been the experience of the people of Ohio under the Constitution of 1851, for, although the General Assembly had specific authority to pass laws to provide against the evils thereof the traffic grew and the evils multiplied, and the people adopted the Constitution of 1912 to restrain the traffic and not to give it greater liberty.

While it is true that under the Constitution of 1912 the General Assembly may not by direct act prohibit the sale, yet the people, by the amendment adopted September 3, 1912, have expressly retained in force existing local option laws, so-called, and by acting under these the people can extend the prohibition over the entire state, so it is clear that the effect of the constitutional amendment of September 3, 1912, was not to relieve the business of trafficking in intoxicating liquors from any burdens nor to put it on a footing with other callings or occupations and permit any person so inclined to enter the business without restraint, but rather to put more restrictions and burdens upon the business, and to restrict the number and class of persons who might engage in it. If there is a common or natural right in every citizen to engage in the liquor traffic, it is not granted, protected or vested by Section 9 of Article XV, but by Sections 1 and 2 of Article I, and as these provisions have been part of the Constitution since the admission of Ohio to the Union, the

people, in adopting the amendment of September 3, 1912, could not have contemplated granting a right which the Constitution recognized since the formation of the state.

Plaintiff contends that Section 9 of Article XV of the Ohio Constitution is in conflict with Section 1 of Article XIV, known as the Fourteenth Amendment to the Federal Constitution, in the provision which limits the number of saloons to one for every five hundred of population, and contends that in this the state denies to persons within its limits the equal protection of the law.

The question involved in this objection has been many times before the Supreme Court of the United States, and before the courts of last resort in many of the states, from the time of the decision in what is known as the "Slaughter House cases" in 15 Wallace, 36, down to the present date and the decisions have been uniform in establishing the rule that the states, in the legitimate exercise of their police power, are not hampered by any provision of the Federal Constitution, and, while there are numerous cases in which the action of the states are held to be in conflict with this Section 1 of Article XIV of the Federal Constitution, it will be found that in every such case the state was attempting, under the color of its police power, to do an act that was not warranted by such power.

Justice Miller, in the Slaughter House cases, *supra*, which were decided shortly after the adoption of the Fourteenth Amendment to the Federal Constitution, laid down the rule that the privileges and immunities of a citizen of the United States which the Federal Government assumed to protect under said Fourteenth Amendment were such only as such citizens theretofore had under the state constitutions. A citizen of a state could not, before the adoption of the Fourteenth Amendment, claim a right or privilege to enter into or remain in a business or calling which might affect injuriously the health, good order, good morals, peace or safety of society, and the Fourteenth Amendment does not guarantee them any such right, privilege or immunity. See Slaughter House cases (*supra*); *Bartemeyer* v. *Iowa*, 18 Wallace, 129.

In *Ohio, ex rel Lloyd,* v. *Dollison,* 194 U. S., 445, plaintiff in error complained that to make an act a crime in one territory and permit it outside such territory is to deny a citizen of the state the equal operation of the law. McKenna, J., says:

"The objection goes to the power of the state to pass a local option law which, we think, it not open to question. The power of the state over the liquor traffic we have had occasion very recently to decide. We said, affirming prior cases, 'the sale of liquor at retail may be absolutely prohibited by the state.'" *Cronin* v. *Adams,* 192 U. S., 108.

"That being so the power to prohibit it conditionally was asserted, and the local option laws of Texas are sustained." *Rippey* v. *Texas,* 193 U. S., 504.

"It is contended that the statute is void in that it deprives all coming within its provisions in the rights, liberty and property guaranteed by the Fourteenth Amendment to the Federal Constitution. It is scarcely necessary to say that if a statute is a legitimate exercise of the police power of the state for the protection of the health of the people and for the prevention of fraud, it is not inconsistent with that amendment, for it is a settled doctrine of this court that as government is organized for the purpose, among others, of preserving the public health and the public morals, it can not divest itself of the power to provide for these objects, and the Fourteenth Amendment was not designated to interfere with the exercise of that power by the state." *Powell* v. *State,* 127 U. S., 683.

This case is known as the oleomargarine case. It arose over a statute of the state of Pennsylvania prohibiting the manufacture and sale of oleomargarine within the state.

"The right to sell intoxicating liquors is not one of the privileges and immunities of citizens of the United States which by the Fourteenth Amendment the states were forbidden to abridge. The state may authorize or refuse to authorize the sale of liquor on such terms as it thinks proper, and the courts of the United States have nothing to do with the exercise of this police power. The act of the Georgia Legislature called in question here provided that in territory outside corporate towns and villages the person desiring to engage in liquor traffic should apply to the ordinary of the county, who had power to grant or refuse such application. It is contended that the act discriminated in favor

of residents in corporate towns and villages, and that the discretion lodged in the ordinary was arbitrary in that it gave him power to reject applications without regard to the applicant's fitness or the propriety and merit of his application, while the ordinary had no such power to reject applications from incorporated towns and villages; that said act was in conflict with the Fourteenth Amendment to the Federal Constitution." *In re Hoover*, 30 Fed. Reporter, 51.

*Held*: The act within the police power of the state and that the Fourteenth Amendment had no application. Citing License cases, 5 Howard, 573; *Bartemeyer* v. *Iowa*, 18 Wallace, 129. Distinguishing: *Yick Wo* v. *Hopkins*, 118 U. S., 356.

This case was affirmed by the Federal Circuit Court for the Southern District of Georgia, Eastern Division, in *Ex rel Hoover* v. *Ronan*, 33 Fed. Reporter, 117.

"If the public safety or public morals required the discontinuance of any manufacture or traffic the hand of the Legislature could not be staid from providing for its discontinuance by any incidental inconvenience which individuals or corporations may suffer. All rights are held subject to the police power of the state. The police power extends to the protection of the lives, health and property of the citizens and the preservation of good order and the public morals. These belong emphatically to that class of objects which demand the application of the maxim '*salus populi suprema lex*' and they are attained and provided for by such appropriate means as the legislative discretion may advise." *Beer Co.* v. *Mass.*, 97 U. S., 32.

"That power (police power) belonged to the states when the federal Constitution was adopted. They did not surrender it and they have it now. It extends to the entire property and business within their legal jurisdictions: both are subject to it in all proper cases." *Fertilizer Co.* v. *Hyde Park*, 97 U. S., 667.

"No Legislature can bargain away the public health or the public morals. The people themselves can not do it, much less their servants. Government is organized with a view to their preservation and can not divest itself of the power to provide for them. The supervision of the public health and the public morals is a governmental power continuing in its nature and

to be dealt with as the special exigencies of the moment may require. For this purpose the largest discretion is allowed and the discretion can not be parted with any more than the power itself.'' *Stone* v. *Mississippi*, 101 U. S., 814.

''No part of the federal Constitution abridges the right of the state to exercise its police powers for the protection of the health, morals, safety and well-being of its citizens when such power is honestly exercised to effect such purpose. It is only when the real object of the Legislature is not to protect or promote the general welfare, but is an attempt under the guise of police regulations to deprive a citizen or resident of his property or liberty without due process of law, that the Fourteenth Amendment to the Constitution of the United States may be invoked.'' *Mugler* v. *Kansas*, 123 U. S., 669.

''It is objected that the provisions of the law requiring an applicant to have the written approval of a majority of the board of police commissioners before the collector can issue a license is arbitrary and unreasonable, and the case of *Yick Wo* v. *Hopkins*, 118 U. S., 356, is cited in support of the objection. Whatever force this objection might have in reference to carrying on the ordinary avocations of life which are not supposed to have any injurious tendencies, it has no force in the present case. It is well settled that the state may prohibit the traffic in liquor altogether. (See *Mugler* v. *Kansas*, 123 U. S., 623.) And if it can prohibit the thing altogether it may impose such conditions upon its existence as it pleases.'' *Ex parte Christensen*, 85 Cal., 213.

The case of *Trageser* v. *Gray*, 73 Md., 250, takes up practically all the legal and constitutional questions raised in the case at bar. The court in that case reviews many cases decided by the Supreme Court of the United States on the constitutional questions raised here in support of its conclusions. It is a strong well-reasoned case and states the law as I conclude it to be after a careful consideration of all the cases cited by counsel on both sides of this case.

The state of Maryland had enacted a system for the regulation of the sale of intoxicating liquors in the city of Baltimore, and said act, in many of its provisions, is similar to the Ohio act under consideration. There a board was established con-

sisting of three commissioners invested with the power of grant-ing licenses to sell liquor at retail. Applicants were required to file a petition with this board, setting forth a number of statements tending to show that they were fit persons to be licensed, which was required to be verified by affidavit. The act further provided that license to sell at retail should be granted only to citizens of the United States of temperate habits and good morals. The plaintiff who was not a citizen of the United States or of the city of Baltimore, but was a native of Prussia, applied for a license which was refused him. He applied for a writ of mandamus in the city court, and, after a hearing on demurrer, his petition was dismissed and brought into the Supreme Court on a writ of error. The sole question presented was whether the statute was a valid and constitutional enactment. The court said, among other things:

"Under every system of government there must be power in some of its departments to provide for the regulations of the internal affairs of the state. Public morals, public health, public order, peace and tranquillity are objects of cardinal importance to the well-being of society. Without the power to protect and preserve these interests civilized governments could not exist. The limits and extent of this power are somewhat vague and undefined. Private interests are frequently found in opposi-tion to the public good and cases may doubtless arise in which it would be a matter of great difficulty and delicacy to settle with justice their conflicting pretensions.

"Every consideration connected with the public welfare im-peratively demands it; it is a duty which the Legislature can not evade. Their power over the whole subject under the Con-stitution can not at this day be questioned. They may prohibit the sale of spirituous liquors entirely if they see fit to do so, or they may restrict it in any manner which their discretion may dictate. No one can claim as a right the power to sell either at any time or at any place or in any quantity. If he is allowed to sell under any circumstances it is simply by the free permission of the Legislature and on such terms as it sees fit to impose.

"It is, however, mentioned by the appellant that although this statute was passed apparently for the purpose of exercising this power it is in conflict with the Fourteenth Amendment because it denies to persons not citizens of the United States

the right to obtain a license to retail liquor and thereby makes unconstitutional discrimination against them.''

The provision of the Fourteenth Amendment referred to is that which says that no state shall deny to any person within its jurisdiction the equal protection of the law.

''It could not be said that any man, alien or citizen, has a natural right to retail intoxicating liquors. According to *Bartemeyer* v. *Iowa,* 18 Wallace, 129, it is not one of the privileges and immunities of citizens of the United States. In *Mugler* v. *Kansas,* 123 U. S., 623, it was said that such a right did not inhere in citizenship, and that it could not be said that government interfered with or impaired anyone's constitutional right of liberty or property when it prohibited the manufacture and sale of intoxicating drinks.

''In *Kidd* v. *Pearsons,* 128 U. S., 1, the statute of Iowa prohibited the manufacture or sale of intoxicating liquors except for mechanical, medicinal, culinary and sacramental purposes, and any citizen of the state was permitted to manufacture or buy and sell for this purpose except hotel keepers, keepers of saloons, eating houses, grocery keepers, and confectioners. The Supreme Court decided that the statute did not in any way contravene any provision of the Fourteenth Amendment. We see that the privilege granted was confined to citizens of the state and that there was a discrimination against five classes of these citizens, but in truth the valid exercise of the police power does not depend on any question of discrimination for or against particular persons or classes of persons. It is confided to the wisdom of the Legislature to make such application of it as the public welfare may require.

''In the case of occupations which may become injurious to the community they may prohibit them altogether or they may permit them in certain localities and on certain terms and under certain restrictions *or they may grant the privilege of pursuing them to some persons and deny it to others.* Individual interests are not at all considered in the exercise of this power.

''And in this case (*Stone* v. *Miss.,* 101 U. S., 814) and subsequently in *Powell* v. *Pennsylvania,* 127 U. S., 684, it was shown that a statute enacted in good faith for the exercise of the police power could not be regarded as repugnant to the Fourteenth Amendment unless it had no real or substantial relation to the objects of such power.

"There are cases unquestionably in which discrimination against particular persons or classes of persons would be unlawful. They are indicated in *Powell* v. *Pennsylvania,* and in many other cases especially in the United States affecting the Legislature of California on the subject of Chinese. It is held that everyone had a right to pursue an ordinary calling on terms of equality with all other persons under similar circumstances— that is, a calling not in any way injurious or likely to become so. The statute now before us oppresses no one and was intended to oppress no one. It does not take from any man a solitary right, privilege or immunity; it subjects no one to penalties for its violation which are not imposed equally on all offenders.

"It does not, it is true, make an equal partition of the privilege of liquor selling among all classes of persons, but there is no warrant for supposing the legislative control over traffic must conform to any such standard; it is not crippled by any such restraint; it overrides all private interests and embraces the means which are necessary and proper to protect the public from the evils connected with the subject.

"Assuredly the Supreme Court did not consider this control as limited by the necessity of making an equal distribution of favors when it said in speaking of the trade in liquor and its consequences: 'The police power which is exclusive in the state is alone competent to the correction of these great evils and all measures of restraint or prohibition necessary to effect the purpose are within the scope of that authority.'' *Mugler* v. *Kansas,* 123 U. S., 659.

"It has been maintained that the appellant (Trageser) has rights under existing treaties which have been infringed by a denial of a license to aliens. Our opinion on this question has been sufficiently indicated, but a few words more may be added. If we assume, for the sake of argument, that Trageser has under treaties every right which a citizen could have, the answer is that no citizen of the United States can complain because a police regulation denies him the privilege of selling liquor, even if the privilege is granted to other citizens. We are unable to conceive that anyone, citizen or alien, can acquire rights which could in any way control, impair, impede, limit or diminish the police power of the state. Such power is original, inherent and exclusive: never been surrendered to the general government and never can be surrendered without impairing the existence of civil society."

The case of *Sedrow* v. *State of Wisconsin,* recently decided by the Supreme Court of that state, but not yet published in

any legal journal, but a copy of the decision which I have received from the Attorney-General of that state through Mr. Northup, of counsel for defendants, is in many points similar to the case at bar.

Some time prior to July, 1913, the exact date of the enactment not appearing in the opinion, the state of Wisconsin enacted a liquor regulation providing a limitation of the number of saloons to be one for every two hundred and fifty of the population and that those who were in business prior to June 30th, 1907, might remain in business, although this would increase the number allowed to any locality beyond the number provided for in the act, but that no additional licenses should be granted for such localities until after the number in business should be reduced below the number provided for in the act. The plaintiff in error was not engaged in the business on the 30th of June, 1907, nor was the place in which he was engaged at the time of his violation of the act entitled to a license.

The court sets out the claims of the plaintiff in error as follows:

"That the act regulating the traffic in providing for license is unconstitutional because it violates the Fourteenth Amendment of the Federal Constitution in that it denies to all the property owners within the city the equal protection of the law; that it creates a monopoly in favor of 2,234 places against 30,000 places in said city; that it discriminates in favor of 2,234 property owners in said city; that it is class legislation because it builds up a class and clothes the class with special privilege; that it deprives persons of their property without due process of law; that it is unreasonable because it confines the saloons to the identical places they occupied on the 30th of June, 1907; that it takes property without compensation."

And the court says:

"The above objections to the constitutionality of the law urged by plaintiff in error are set forth in detail not for the purpose of separate treatment in the opinion but to show that they were raised and that none have been overlooked by the court. Whether all the rights therein claimed to attach to property or to persons are in fact rights or privileges which the Constitution or the law recognizes is needless to discuss or determine in this case, for it is established by the early decisions

of this court, as well as by other courts, that as respects the liquor traffic, the Legislature in the exercise of the police power has plenary authority to prohibit it altogether or to restrict it in any reasonable manner.    The justification for the exercise of the police power in restraining or prohibiting the sale of intoxicating liquors has been stated and re-stated by the courts time and again.    It may be summed up as resting upon the fundamental principle that society has an inherent right to protect itself; that the preservation of law and order is paramount to the rights of individuals or property in manufacturing or selling intoxicating liquors; that sobriety, health, peace, comfort and the happiness of society demand reasonable regulations if not entire prohibition of the liquor traffic in respect at least to drunkenness, poverty, lawlessness, vice and crime of almost every description.    Against this result society has the inherent right to protection itself, a right which antedates all constitutions and written law, a right which springs out of every foundation upon which the social organism rests, a right which needs no other justification for its existence or exercise than that it is reasonably necessary in order to promote the general welfare of the state.    It so happens that temporarily certain places or persons are given a preference or that rights theretofore enjoyed are limited or entirely destroyed.    Such result does not affect the validity of the act.    (*Mugler* v. *Kansas,* 123 U. S., 633.)

"The preferences created result from the effort to temporarily protect business that was established at the time the law went into effect."

The police power of the state is broad and comprehensive. Under it may be enacted laws that limit and interfere with what may be called natural inherent rights, among which is the business of preparing, handling and selling food, the business of plumbing, sanitary engineering, the business of operating machinery, attending steam boilers, manufacturing explosives, the professions of medicine, dentistry, pharmacy, and many other professions and occupations, and the class of cases which plaintiff has cited in support of his contention that the act in question is unconstitutional all come under one or the other of the subjects above enumerated, and no one of them is a case coming under any business or calling that may be entirely prohibited.    It is admitted by counsel for the plaintiff, that the liquor traffic may be prohibited and entirely wiped out, but

the state, in the exercise of its police power, could not prohibit any of the occupations or callings above enumerated, but could only restrict or regulate them.

I am of the opinion that the cases heretofore cited dispose of all the points raised by the petition of the plaintiff in this case, especially the cases of *Trageser* v. *Gray* and *Zodrow* v. *Wisconsin*, with the possible exception of the question of the right to issue licenses to corporations. But the other objects raised will be noticed.

The second specific objection of plaintiff is that the licensing act violates Section 9 of Article 15 of the Constitution of 1912, in that it authorizes the granting of licenses to corporations. Said section provides as follows:

"License to traffic in intoxicating liquors shall be granted in this state, and license laws operative throughout the state shall be passed with such restrictions and regulations as may be provided by law, and municipal corporations shall be authorized by general laws to provide for the limitation of the number of saloons."

These are the express grants made in this section. All other matters relatng to the licensing of saloons are limitations. It is provided further in said section as follows:

"License to traffic in intoxicating liquors shall not be granted to any person who, at the time of making application therefor, is not a citizen of the United States and of good moral character."

It is conceded that the word "person" as here used refers to a natural person. It is also conceded that a corporation whether organized under the laws of this state or of any other state, is not a citizen of the United States. And it is needless to say that the corporate entity, as such entity, can have no character, either good or bad.

Plaintiff contends that because of this limitation the licensing act authorizing licenses to be issued to corporations is unconstitutional.

Section 1 of Article II of the Constitution of 1912 provides that:

"The legislative power of this state shall be vested in a General Assembly consisting of a Senate and a House of Representatives, but the people reserve to themselves the power to propose," etc.

It has long been the established rule of construction in this state that the Legislature has full power to enact any and all necessary legislation, unless it is restricted by some part of the Constitution. In other words, it has all power not prohibited to it by the Constitution.

"It is not that the legislative power as conferred in the Constitution shall be vested in the General Assembly, but that the legislative power of this state shall be vested. That includes all legislative power which the object and purpose of the state government may require, and we must look to other provisions of the Constitution to see how far and to what extent legislative discretion is qualified or restricted." *Baker* v. *Cincinnati*, 11 O. S., 534; *State* v. *Guilbert*, 70 O. S., 252.

"Therefore, when the power of the General Assembly to enact such a law is drawn into question the proper inquiry is whether such an exercise of legislative power is clearly prohibited by the Constitution." *Baker* v. *Cincinnati*, 11 O. S., 534.

"Such prohibition must either be found in express terms or be clearly inferrable by necessary implication from the language of the instrument when fairly construed according to its manifest spirit and meaning." *Cass* v. *Dillon*, 2 O. S., 607; *Lehmann* v. *McBride*, 15 O. S., 592.

The limitation contained in Section 9 of Article XV, denying license to persons who are not citizens of the United States and of good moral character, in my opinion is not a clear prohibition preventing the Legislature from enacting a law licensing corporations in the liquor traffic, nor, in my opinion, would such a prohibition arise by implication from this section, and I fail to find in any section of the Constitution anything that might be a prohibition of this act.

The Legislature has in enacting this law placed this construction upon said Section 9 of Article XV, and I can see no reason for overruling such a construction.

It is argued that a corporation can not be imprisoned for a violation of the. act. The fact that the Legislature might fail to prescribe a penalty for a violation of the act does not affect, in any way, the question of its constitutional power to pass the act, and, as a corporation in selling liquor, either legally or illegally, must act through an agent, the agent who makes the illegal sale may be punished under the provisions of the present. act.

It is contended again that the license act violates Sections 1 and 2 of Article I of the Ohio Constitution in giving preference to those engaged in the business prior to May, 1912. I think this objection has been met by the opinion heretofore announced, but it will be noticed further.

Plaintiff should not be heard to complain of this provision for no injury has been done to him, as he was one of the favored ones. He alleges in his petition that he was in business prior to the date mentioned, and, as no injury was done to him by this alleged unconstitutional provision, he would have no standing in court to enable him to test its constitutionality. But is it unconstitutional?

The Bill of Rights guarantees to no one rights, privileges or immunities which may conflict with the exercise of the police power. The people might have prohibited the traffic; they limited it instead to one person in every five hundred. All who engaged in the traffic after the Constitution of 1851 did so at at their peril. It was not recognized as a lawful business, but the Legislature, desiring to save to dealers as much as possible, and while empowered by the Constitution to issue but a limited number of licenses, did what it could to protect investments theretofore made. Plaintiff being among the favored number could not complain. One not in business prior to May, 1912, could not complain, for no right or immunity was taken from him; it could, therefore, be but a moot question which the court would not entertain.

Again this objection may be answered by calling attention to the following schedule to the several amendments submitted and adopted September 3d, 1912, which provides among other things the following:

"Any provision of the amendments passed and submitted by this convention and adopted by the electors, inconsistent with, or in conflict with, any provision of the present Constitution, shall be held to prevail."

And I might further say that the right of the people to protect and defend their health, morals and safety existed before Constitutions and is a paramount right and one which the people can not surrender.

The Supreme Court of Ohio, in *Addler* v. *Whitbeck*, 44 O. S., 574, say:

"It is averred that from a long time prior to the enactment of this law the plaintiffs have been engaged in the trafficking of intoxicating liquors and have had a large amount of property invested in the business, and it is claimed that the law could not be made applicable to them without impairing vested rights. The claim is not tenable; it would subvert the power to provide against the evils of the traffic and place it superior to any regulation whatever.    The provisions of Section 9 of Article XV of the Constitution have stood since its adoption as a perpetual admonition to all persons engaging in the traffic that in doing so they place their property invested in the business subject to the power of the General Assembly to provide against the evils resulting from the traffic.    The same argument was made in *Miller* v. *State*, 3 O. S., 475, against the act of 1854, prohibiting among other things the sale of liquor to be drunk upon the premises where sold; but it met with no favor in the court.    The law was held valid.    (See opinion of Thurman, J., in the case.)

"No prescriptive right can be claimed by persons engaged in the whiskey traffic against the exercise of its functions by the Legislature of the state.    It was said by Taney, C. J., in the License cases, 5 Howard (U. S.), 577: 'If any state deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idleness, vice or debauchery, I see nothing in the Constitution of the United States to prevent it from regulating and restraining the traffic, or from prohibiting it altogether if it thinks proper.'"

Another objection raised by the petition is that the licensing act violates Section 1 of Article II of the Ohio Constitution. This refers to the power given county licensing boards, by

Section 19, to determine the moral character of applicants, and by Section 21 to require certain information to be furnished by applicants under oath. I fail to find any legislative power conferred by Section 21, and as counsel has presented no argument in support of plaintiff's contention in this respect this objection will not be further noticed.

Does Section 19 grant legislative power? In support of the claim that it does plaintiff has cited but one case, that of *Harmon* v. *State,* 66 O. S., 249.

This case does not, in my opinion, lay down any such rule. And the decision does not show any intent on the part of the court to hold that the authority given by a number of the statutes to boards appointed to pass upon the qualifications of applicants to practice the learned professions such as law, medicine, dentistry, teaching and the like, is a delegation of legal power. However, the question in my opinion, is settled against the plaintiff's contention by the case of *Theobald* v. *State,* 10 C.C.(N.S.), 536.

The court is, therefore, of the opinion that the demurrer to the petition should be sustained; and the same is sustained and the petition dismissed. Plaintiff excepts. Plaintiff, not desiring to plead further, it is ordered that defendants have judgment for their costs. Plaintiff excepts. Plaintiff gives notice of appeal; bond on appeal fixed in the sum of $200.